Reed, J.,
delivered the opinion of the court.
Ellen Clemons, appellee (plaintiff below), until January 26, 1890, was the wife of and living with’C. C. Clemons, who died on the date mentioned. The testimony establishes the fact that one Dempsey Reese, who appears to have been without family, much of the time in poor health, and of dissolute habits, was, during at least a part of the time, a business partner of C. C. Clemons; that he made his home with Clemons and his famity from about May 1,1877, to the time of Clemons’ death, and subsequently with his wife and family the most of the time until his own death, in November, 1890. Appellant was appointed administrator of Reese’s estate, against which appellee filed a claim for board, washing, personal attention, care, nursing, etc., from May 1, 1877, to November, 1890, the time of his death, aggregating $10,207.67, which was disallowed by the administrator and this suit brought to recover it.
*252 The testimony introduced was in regard to the whole time, commencing in May, 1877, to which objection was made by defendant’s counsel that the claims, until sometime in the year 1885, were barred by the statute of limitation. Objection was also made that the wife could not recover, previous to the death of the husband, except for personal services. During the course of the trial both objections were sustained, the evidence of all matters previous to 1885, and of all claims, except the personal claims of the wife between 1885 and the death of the husband, was stricken out, and the jury was fully instructed to disregard it. After the close of the plaintiff’s evidence, application was made to reform the account and confine it to the matters allowed by the court, which was granted, and the amendment made. The jury found for the plaintiff in the sum of $1,500; judgment entered upon the verdict and this appeal taken.
This is one of those peculiar cases that should be closely scrutinized. After years of waiting and after the death of Reese, it appears that the bill was presented for the first time to the administrator. There is no evidence that it was ever brought to the attention of the debtor, and a claim made for payment. That there were services of a very disagreeable and sometimes disgusting character, owing to the inebriety and habits of the deceased, for many years, continually performed by the plaintiff, is clearly established by the evidence. How much compensation had been paid, except the sum of $100 shown to have been paid on one occasion, was not shown or attempted. The evidence in regard to any contract to pay is vague, indeterminate. What there is of it was of promises to remunerate at his death by leaving her his property. The claim of over $10,000, as presented, was probably enough to absorb the whole estate, and based'upon the promise to leave to her the entire property at his death. A great portion of it was cut off by the court, holding it barred by the statute of limitations, and another large portion by excluding what should have been the claims of the husband.
The jury found her individual services previous to the *253 death of her husband, supplies furnished and services after his death, to amount to $1,500. The verdict was sustained by the court.
Counsel for appellant in argument rely upon the 2d and 3d assignments of error, that the court erred in allowing testimony to go to the jury of matters occurring more than six years before bringing suit, and in allowing evidence of supplies, board and care furnished by the husband up to the time of his death. Such evidence was allowed until towards the close of plaintiff’s case in chief, and was then stricken out by order of the court. In the instructions the court very carefully and clearly charged the jury what items of account it could consider if it found the estate liable. . A well defined distinction should be drawn between cases where the court admits improper evidence establishing the right to recover, and afterwards has it stricken out, and the present case, where such action only limits and restricts the amount that could be found in case the right to recover was established. If the court erred, which we are not inclined to admit, the defendant could not have been prejudiced.
The claim is made that the verdict was contrary to the instructions of the court. In what respect is not pointed out, and we fail to find it so upon examination. A careful examination shows the instructions clear, concise and unmistakable. In fact, one short paragraph given at the instance of the defendant embraced and covered about all the law in the case. It was: “ To recover in this action, the plaintiff must prove a contract either express or implied, and that services were rendered under such contract and the value thereof.” This, with the former instructions limiting and defining the right, if any, to recover, was all the jury needed to guide them.
The only troublesome question presented is whether an implied or any express promise to pay could be based upon the evidence of a promise to leave her his property at his death. It is ably urged in argument that, under the facts as proved, no recovery could be had. Miller v. Lash, 85 N. C. 51.
*254 In re Miller’s Estate, 136 Pa. St. 239, and Woods v. Ayers, 39 Mich. 345, are cited and relied upon. Neither case sustains the contention, but will sustain the judgment in this case.
Miller v. Lash was almost identical with the one under consideration, in that plaintiff sued administrator to recover compensation for services rendered his intestate in the management and supervision of his domestic affairs, etc., and also for her special personal care and attention to the intestate for a series of years. The evidence established the fact, as in this case, of the high appreciation by the deceased of the services of plaintiff, and of his intention to make a liberal provision for her in his will. Such provision was not made. Counsel appear to have relied upon a statement not involved in the case, “ that where services are given in the mere expeetation of a legacy, not founded on contract, no action can be sustained for their value where such expectations are disappointed,” — ignoringthe principle and decision involved, that, “ where services are performed by one person for another, under an implied or express contract that the party receiving the service will provide compensation in his last will, and the hitter dies without making such provision, an action will lie on a quantum meruit for the reasonable value of such services;’'’ then holding the reverse of this case, that, the time of payment being after the death of the party, the statute of limitations did not commence to run until after the death.
In In re Miller’s Estate the same doctrine is held, that where there is no promise, but a bare expectation of a legacy, the party takes his chances of receiving it, and no action can be maintained; but goes on to say: “To sustain a claim against the estate of a decedent for services rendered under an alleged contract to pay for them after death, either specifically or by way of a legacy, it is indispensable that there be proof of the services actually rendered. Evidence in support of such claim, which fails to show either the terms of a definite contract to pay or what services were rendered from *255 which a contract to pay can be implied, is insufficient to authorize the allowance of payment.”
It is clear that the evidence in this case brings it within the doctrine asserted in those, and the contract to pay by bis last will was operative and could be enforced upon the proof of the services and their value.
In the Michigan case of Woods v. Ayers, it is said: “No implied contract or promise rises from a spontaneous service done as an act of kindness and without being asked, or where it is accounted for on more likely grounds than a promise of payment,” and, as will readily be seen, has no application to this case.
The two questions were fairly submitted to the jury: 1st, whether there was a promise to pay out of the estate, after death ; 2d, the value of the services rendered; — and both were found.
The action was assumpsit upon a quantum meruit. It is a well settled principle that assumpsit does not necessarily imply a contract, but may lie where some duty would justify the court in imputing a promise to perform it. The jury having found that the services were performed, and their value, plaintiff could maintain her action and the judgment should be affirmed. .

Affirmed.