[No. 3455.]

## NORTON'S ESTATE v. McALISTER.

1. JUDGMENT—*When a Bar.* Under the provisions of the code (Rev. Code, secs. 183, 184) a judgment of non-suit, for the failure to establish by testimony a case sufficient to go to the jury is no bar to a subsequent action upon the same cause of action.

2. CONTRACT—*Meeting of Minds.* Promise by an aged and infirm gentleman to his niece, who at his request has assumed the position of his housekeeper, that he will convey certain real estate to her, there being no agreement that it shall be in full satisfaction of the services to be rendered by her, is no bar to an action for the value of such service.

3. —— *Modification of Contract.* A niece enters into the service of her uncle as his housekeeper. In her action against his estate for the value of her services it was contended that by her agreement, she was to remain with him during his life time, and that she had broken her agreement by contracting marriage and quitting his household before his death. But it appearing that the uncle had consented to the marriage, and thereafter as well as before had frequently expressed an intention to reward his niece, this was held to evidence a modification of the contract by mutual agreement.

4. —— *Contract for Personal Services—Breach—Quantum meruit.* Agreement by uncle to vest his niece with certain real estate, either by conveyance or will, in consideration of personal services rendered to him. He dies without performing the contract. The niece may recover against his estate the value of her services.

5. LIMITATIONS—*When the Statute Begins to Run.* Where by agreement personal services are to be compensated only at the death of the party receiving them, the action accrues upon his death, and the statute runs from the same date.

*Appeal from Denver District Court.* Hon. Greeley W. Whitford, Judge.

Mr. George W. Dunn, Mr. B. C. Hilliard, Mr. J. R. Allphin, for appellant.

Mr. John Hipp, Mr. W. W. White, for appellee. Cunningham, Judge.

This appeal is prosecuted from a judgment of the district court in favor of appellee, plaintiff or claimant below, based upon a claim which she filed in the probate court against the estate of Samuel B. Norton for services rendered the said Norton during his lifetime.

The following are the facts which are either conceded or not disputed seriously: In 1897, Dr. Samuel B. Norton, then residing in this city, wrote several letters to appellee, who was then residing in Chicago, urging her to come to Denver and make her home with him, for the purpose of taking care of him in his declining years, he then having reached an advanced age, and being at the time also in ill health. Appellee was a niece of Dr. Norton, and at that time unmarried, her maiden name being Rose A. Wheeler. After receiving three urgent letters from her uncle, appellee came on from Chicago to Denver. It appears that no definite arrangement had been made as to her compensation prior to her arrival here. Shortly after appellee's arrival, her uncle stated to her that if she would take care of him in his declining years he would in some way convey to her a house and lot in North Denver, which the doctor then owned. There is nothing in the record which shows specifically that Miss Wheeler ac-

cepted this offer, unless it be that from the fact that she remained with him for five years, without any more definite understanding, it may be inferred that she assented thereto.   Whatever the arrangement may have been, appellee remained from 1897 to 1902 at the home of Dr. Norton.   There is no dispute that he was sorely in need of the kindly care and attention which, as nurse and housekeeper, his niece bestowed upon him.   In 1902, five years after having taken up her residence at her uncle's home, Miss Wheeler was married to H. D. McAlister, and thereupon took up her residence with her husband on Race street, in the city of Denver, at no great distance from the home of her uncle.   Dr. Norton appears to have freely consented to the marriage of his niece with McAlister, who had for a long time been a neighbor and friend of the doctor, and the most cordial relations appear to have continued to exist between Mr. and Mrs. McAlister and Dr. Norton down to the date of the doctor's death in 1907.   During the five years succeeding the marriage of Miss Wheeler, it was a custom of the doctor to go frequently to her new home, or to be taken there by Mr. McAlister, and return to his own home after he had spent a portion of the day thus visiting with the McAlisters.   In like manner Mrs. McAlister visited her uncle at his home from one to three times a week, for the purpose of keeping a general superintending care over him for his benefit, and general comfort.   She often took food specially prepared from her own home to him, and she was with him during his last illness, and down to within a few hours of his death, which occurred in the night, a few hours after Mrs. McAlister had returned to her

home for a period of rest. The record shows that
Dr. Norton continued throughout the whole ten years
immediately succeeding the arrival of appellee from
her home in Chicago, and down to the date of his
death, to recognize and acknowledge his obligation to
her, and he expressed to various persons, on divers
occasions, his intention to recompense her therefor.
He thus manifested his purpose frequently after Mrs.
McAlister's marriage. He apparently had no great
amount of ready cash or personal property; at any
rate, it is shown that he stated that he had none, and
always indicated his intention to compensate his
niece by willing or transferring property to her, so
that she would come in possession of it after his
death. Following Dr. Norton's death, no will, con-
tract deed or other instrument was found, whereby
he had sought to discharge his obligation to his
niece. Thereupon she filed her claim with the pro-
bate court for services rendered from 1897 to 1902
(the last date being the date of her marriage). This
claim was contested by the administratrix, the doc-
tor's wife, and a formal trial was entered upon to a
jury. At the close of Mrs. McAlister's testimony,
offered in support of her claim, the record shows
that the attorneys representing the estate moved for
"judgment as of non-suit, which is argued by coun-
sel, at the conclusion of which, and being fully ad-
vised in the premises, it is considered by the court
that the said motion be and is hereby granted, and
that judgment of non-suit be and it is hereby en-
tered herein," so reads the record of the probate
court on the hearing of the first claim. (A similar
claim, to which we shall presently advert, was filed
later.) Thereupon the claimant prayed and was al-

lowed an appeal to the district court from the non-suit entered at the request of counsel for the estate on the hearing of the first claim. When the case was called for hearing in the district court, the attorneys representing the estate promptly moved, "that this appeal be dismissed and this cause remanded to the county court," basing their motion upon the representation then made that the claim had been non-suited in the county court, and claimant had not, "within ten days thereafter, or at any other time or at all, applied to the said honorable county court to have set aside and vacated said judgment of non-suit." This motion was granted by the district court, and the following order entered in connection therewith: "It is considered by the court that the appeal herein be, and the same is hereby dismissed, and that the judgment of the county court stand in full force and effect, and that this cause be remanded to the said county court for such other and further proceedings as shall be necessary to the final execution of the judgment of said county court." This order of dismissal was entered in the district court on December 2, 1907. Appellee thereafter, and on January 20, 1908, filed a second statement of her claim against the estate in the county court, which second claim appears to have been based upon the same services as those included or covered by the first claim, disposed of as above stated, with the addition that she claimed $1,000 for services which she rendered Dr. Norton subsequent to her marriage. This claim came on for hearing in the county court, and was likewise disallowed in that court, but upon appeal to the district court the claim was allowed in the sum of $2,020, and it is

from this allowance or judgment that this appeal is prosecuted.

Appellant's contentions are:

(a)   That the action of the county court in granting the motion for judgment as of non-suit interposed by the estate at the conclusion of the claimant's testimony at the hearing on the first claim, and the action of the district court in thereafter dismissing the appeal from the county court (not having been taken to the supreme court for review) constituted a final adjudication of plaintiff's rights to recover, at least for all services rendered prior to her marriage.

(b)   That whatever services plaintiff rendered Dr. Norton were performed under a specific contract whereby she was to receive, by will, the North Denver property, providing she remained with and cared for him until the time of his death. Therefore, having voluntarily quit his employ, she thereby violated or abandoned the contract, and may not recover anything whatever for such services as she did render.

(c)   That if plaintiff is entitled to recover, *quantum meruit* is not her remedy, and she can only recover in an action either for specific performance, or in an action on the contract for damages, in which her measure of damages would be the value of the North Denver property.

(d)   That claimant's claim is barred by the statute of limitations, appellant's contention on this point being that whatever right, if any, claimant had to recover for services rendered prior to her marriage, accrued at the time of her marriage, January 15, 1902. Therefore, the appellant says that the sec-

ond claim, which was filed January 20, 1908, was filed a few days more than six years after plaintiff's cause of action thereon had accrued.

1.   It will be seen that the facts in this case and those under consideration in *Tucker v. Tucker,* recently decided by this court, and reported in 121 Pac., 125, and, in many respects, strikingly similar.

As to the plea of *res adjudicata,* it will be remembered that the first claim was disposed of in the county court by granting a motion for a non-suit interposed by the estate at the conclusion of claimant's testimony, and without any proof having been offered by the estate.   Such a judgment is not *res adjudicata* upon the merits and cannot be plead as a bar to another suit upon the same cause of action by the same parties.

*D. & R. G. R. Co. v. Iles,* 25 Colo., 19.   *Hallack v. Loft,* 19 Colo., 80.   *Russell v. Rolfe,* 50 Ala., 56.

In the latter case it is said.

"A non-suit is no bar to another action for the same cause unless made so by statute."

Our statutes not only have not made a non-suit a bar to another action, but on the contrary, sections 183 and 184 of our code (R. S. 1908), plainly indicate a contrary intention.   The non-suit in the case now under consideration, was granted under the fifth subdivision of section 183, which reads as follows:

"An action may be dismissed or a judgment of non-suit entered in the following cases   *   *   * *Fifth*—by the court upon the motion of the defendant when upon the trial the plaintiff fails to prove sufficient case for the jury."

Section 184 reads:

"In every case other than those mentioned in the last section, the judgment shall be rendered upon the merits."

In *Wood v. Ramond,* 42 Calif., 145, it is said:

"A non-suit claimed on the motion of the defendant is equivalent in its operation on the action, to a dismissal with the consent of the defendant."

From the above authorities it would seem clear that appellant is not in a position to invoke the doctrine of *res adjudicata.*

2. The second contention of appellant will next be considered. We are not disposed to think that the record warrants the conclusion that there was a hard and fast contract entered into between the claimant and Dr. Norton, whereby he was to give, and she was to receive, as full compensation for her services, the North Denver property. In the case of *Porter v. Dunn,* 131 N. Y. Court of Appeals, 314, a situation strikingly similar to that here under consideration was before the court. The conclusion reached in that case strongly supports our views that there was no contract made in this case, and that the statements of Doctor Norton at or about the time the claimant entered upon her duties, of his intention to remember her in his will, or to convey a certain piece of property to her, does not foreclose or bar her right to maintain this action for the value of her services. We shall not prolong this opinion by any lengthy quotations from the New York case, but content ourselves with the following:

"He (the deceased) may have spoken in good faith, while Mrs. Porter listened and believed and probably hoped; but where are the elements of any agreement, or how does the promise of a testator's

gift, not performed, operate to restrict the plaintiff's right to recover for the value of his wife's services (the husband brought the suit) and how can such promise tend to prove or affect the reasonable value of the services after the same have been rendered? I do not think that any inference can be drawn from the fact of a promised gift by will, except that of a purpose to enlist and retain the services of the wifc and the attention of the family.''

It is true that the administratrix testified that a contract was drawn up and the name of the individual who prepared it was given, but she did not testify that the claimant signed the contract, nor was any such writing produced on the trial, nor was any demand made for its production. Furthermore, there is testimony in the record to the effect that Doctor Norton frequently told his niece and others, both before and after her marriage, that it was his purpose to convey, by will or otherwise, the North Denver property to her, but we discover no testimony to show that he ever stated to her, or anyone else, that this would be her full compensation, or that she must remain with him until his death in order to receive that, and failing to so remain, she would receive nothing.

But, even if it be granted that a contract, such as that which is insisted upon by appellant, was entered into, it does not follow, nor do we think the evidence discloses, that the same was broken by appellee. By the mutual consent of both parties to the contract, if there was a contract, it was modified to the extent of permitting the claimant to establish a home of her own, and to thereafter render services of a somewhat different character from those that

she was rendering prior to her marriage. In all other respects the contract appears to have remained the same. The time of payment was always considered by the doctor as co-incident with his death, and there is nothing to indicate that Mrs. McAlister entertained a different understanding.

3.    If there was a contract, then Doctor Norton failed to observe the same, inasmuch as he died without having conveyed the North Denver property to his niece or made any provision whatever for her compensation. Under such circumstances Mrs. McAlister was not bound by the contract, or any feature or condition of it.

In *Miller v. Lash,* 85 N. C., 51, at 54, it is said:

"The authorities cited in the argument for the plaintiff seem to establish the proposition that where personal services are performed by one person for another during life, under a contract or mutual understanding, fairly to be inferred from their conduct and declarations and the attending circumstances, that compensation therefor is to be provided in the will of the party receiving the benefit of them, and the latter dies intestate, or fails to make such provision, the subsisting contract is then broken, and not only will the action then lie for the recovery of their reasonable value freed from the operation of the statute (of limitations), but it could not be maintained before."

The right of appellee to maintain her action on a *quantum meruit* also finds support in *Snowden v. Clemons,* 5 Colo. App., 251.

4.    Was appellee's claim barred by the statute of limitations? From the record in this case, and from the quotation just made from *Miller v. Lash,*

*supra,* it would appear that this question must be answered in the negative. There is ample evidence in' the record to support the conclusion that it was the understanding of both parties to the contract that the compensation to be paid appellee, as we have already indicated, would only become due and payable upon the death of Doctor Norton. The claimant so testified specifically, and there is evidence *to indicate that such was the doctor's under-standing.* Hence it would follow that her right of action did not accrue until the death of the doctor, and that the plea of the statute of limitations can not be allowed.

The judgment of the trial court will be affirmed.

*Affirmed.*