Floyd W. GARDNER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16219.

United States Court of Appeals
Fifth Circuit.

Dec. 19, 1956.

Charles H. Kirbo, Vance Custer, Bainbridge, Ga., for appellant.

Donald A. Campbell, Atty., Dept. of Agriculture, Washington, D. C., Robert B. Thompson, Asst. U. S. Atty., Macon, Ga., Neil Brooks, Asst. Gen. Counsel, Dept. of Agriculture, Washington, D. C., J. Stephen Doyle, Jr., Atty., U. S. Dept. of Justice, Frank O. Evans, U. S. Atty., Macon, Ga., Linton B. West, Fred W. Harris, Jr., Attys., U. S. Dept. of Agriculture, Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

This action was instituted by the United States against the appellant for the purpose of collecting civil penalties in accordance with the provisions of Sec. 359 (a) of the Agricultural Adjustment Act of 1938, as amended, 7 U.S.C.A. § 1359

(a).[1] The appellant admittedly harvested from his farm, in 1949, 1950, 1951, and 1953, peanuts in excess of his farm acreage allotments for those years, respectively, and the appellant admittedly did not comply with the requests which he received from the Administrative Agency to account for the disposition of the peanuts.

Based on these facts it was alleged: that the County Committee, in accordance with Section 1301(b) (13) (E)[2] of the Act, had, as a basis for the penalty sued for, determined the normal yield of the acreage overplanted, that the penalty rate is calculated according to the terms of the act and the regulations, and the defendant is indebted to the United States in aggregate penalties of $1,431.-32.

While the defendant did at first make contentions as to the validity and construction of Sec. 1359(a), prescribing the penalty, the issues in the case were narrowed by the decision in the Bowers case to the question of the normal yield on the excess acreage, and the trial turned below and turns here on whether the government made legal and adequate proof of this necessary basis for determining and recovering the penalty. While its sole reliance was and is on the determinations of the County Committee, included in this inquiry are the questions (1) whether determinations were arrived at in accordance with the provisions of the statute; (2) whether they were properly proven; and (3) whether

the court erred in treating them as presumptively correct and directing a verdict in accordance with them.

Plaintiff's proof consisted of the introduction into evidence, over defendant's objections, of separate certificates of the County Committee as to the normal yields of appellant's farm for 1949, 1950, 1951, and 1953. Each of these was purportedly signed by H. Jack Martin, the chairman of the committee, was identified by a member of the committee and by the office manager of the Administrative Committee who was the official custodian of the documents. The certificate for 1949 referred as its authority and basis to Section 729.25 of the Regulations; that for 1950 to Sec. 729.125; that for 1951 contained no reference to any section; while that for 1953 referred to Sec. 729.43. To each of the certificates, except that for 1951, was appended a certificate signed for the Georgia State P.M.A. Committee, stating that it had approved the above determination.

Each certificate, after stating Gardner's name and the number given to his farm, provided: "This is to certify that the production and marketing administration committee for Decatur County has determined the normal yield per acre for the above identified farm, pursuant to Section * * * of the Peanut Marketings Quota Regulation for the * * * marketing year to be * * pounds of peanuts", and the respective determinations were as follows: for

---

1. Cf. Bowers v. United States, 226 F.2d 424, where this court dealt with and determined the validity of this section.

2. " 'Normal yield' for any farm, in the case of corn, wheat, cotton or peanuts, shall be the average yield per acre of corn, wheat, cotton or peanuts, as the case may be, for the farm, adjusted for abnormal weather conditions and, in the case of corn and wheat, but not in the case of cotton or peanuts, for trends in yields, during the ten calendar years in the case of corn and wheat, and five calendar years in the case of cotton or peanuts, immediately preceding the year in which such normal yield is determined. For 1942, the normal yield for any farm, in the case of peanuts, shall be the average yield per acre of peanuts for the farm, adjusted for abnormal conditions, during the years 1936–1940, inclusive, except that for any county in which the years 1935–1939, inclusive, are equally as representative, such period may be used in determining normal yields for farms in the county. If for any such year the data are not available or there is no actual yield, then the normal yield for the farm shall be appraised in accordance with regulations of the Secretary, taking into consideration abnormal weather conditions, the normal yield for the county, and the yield in years for which data are available." 7 U.S.C.A. § 1301(b) (13) (E).

1949, 700, for 1950, 530, for 1951, 500, and for 1953, 540 pounds per acre. The excess acreage in each of the years, while a little more than, was substantially as found by the jury, in 1949 10.6 acres, in 1950 7.5, in 1951 10.6, and in 1953 10.6; while the penalty rates were in 1949 5.3, in 1950 5.4, in 1951 5.8, and in 1953 5.9 cents per pound.

When the certificates were offered they were objected to by the defendant on the ground that this was not the proper way to show the determination, and after they had been admitted, the government offered a witness, Cloud, in an attempt to show how the normal yield was determined. He stated that the normal yield was based on surrounding farms, and production and type of year involved, whether a crop failure or normal year or exceptionally good year. He did not know whether the adjoining farm was compared or not. He apparently had no recollection of the weather involved.

Among the objections made was that it appeared from the testimony of this witness that the minutes of the committee were kept by Mr. Yates, the secretary, that he was the proper person either to prove the records or to certify them, and that, though he had testified that minutes were kept of their meetings, he had failed to find any minutes showing the action of the committee when the normal yield of this farm was determined.

The defendant, on his part, offered little or no evidence to show the normal yield of the farm except the statement of one witness that there was a poor yield for one year on land adjoining it, and the testimony of one witness that in 1949 he picked the peanuts on Mr. Gardner's land and at the rate paid him for picking there were about one and three-fifths tons, while the government offered the statement made to the committee by the defendant showing that in the year of 1952, when he was given a peanut acreage allotment of 8.7 acres, he harvested two and one-half tons.

At the conclusion of the evidence, the government moved for a directed verdict on the grounds: that the committee determinations had established the normal yield for the defendant's farm; that there was absolutely no evidence in the record, other than that of the government, upon which the jury could set a normal yield, and anything they fixed other than this would be pure speculation; that there was no dispute as to the number of acres planted, except in one or two years and the government would concede the smaller figure for those years; and that there was no dispute as to the penalty rate.

To this the defendant replied, "I think, your Honor, there is a definite issue here on the question of what the normal yield is. I think the evidence shows undisputedly that the committee failed to establish the normal yield as required by the statute, and that it is a jury question as to what the actual yield was." Whereupon, the district judge stating, "I am going to take your motion under advisement until after we see what the jury does", went on to say that he would charge the jury: that this was a case for the determination of the normal yield; that the defendant did not furnish the local committee with data from which they could determine the actual yield, and the local committee would have to do the best they could in fixing the normal yield; and that it would be for the jury to say whether or not the local committee correctly determined the normal yield.

In connection with the submission on a full charge of the issue and the controlling statute and regulations, while the court charged the jury that the burden was on the government to prove by a preponderance of the evidence all of the material allegations contained in its petition, he nevertheless charged the jury that under the evidence in the case it became the duty of the proper committee to determine the normal yield per acre for this farm, and, in connection with that charge he instructed them: "The law presumes that they performed their duty, and there is evidence before us as to what they said the normal yield was. Their finding and their fixing of the nor-

mal yield is presumed to be correct, and ought to stand as matter of law unless, in your opinion, the defendant in this case has carried the burden of proving to you by a preponderance of the evidence that those normal yield figures are incorrect."

Thereafter the jury returned a verdict finding for plaintiff, not for $1,431.-32, the amount sued for, or for $1,320.78, for which the plaintiff asked an instructed verdict, but for a sum very much less, $233.74. They arrived at this by determining in their verdict the normal yield at amounts very much less than those shown in the committee's certificate and, therefore, the pounds excess and the penalty for each year very much less than those claimed by the plaintiff.

Plaintiff moving for a judgment for $1,320.78, in accordance with the motion for directed verdict, the district judge, filing a memorandum in support of his action, granted the motion, entered judgment accordingly, and this appeal followed.

Here urging four grounds [3] for reversal, defendant insists that the judgment must be reversed.

In reply to appellant's attack upon the findings that the regulations under which the committee acted were in conflict with the statute, appellee insists that appellant's claim that the regulations are in conflict with the statute disregards the familiar principle that a regulation issued by an administrative official under the direct authority of the statute may not be found invalid for inconsistency unless the variance is so clear that it is manifest that the court has no choice except to hold that the administrator has

exceeded his authority and employed means that are not appropriate to the end specified in the act. Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846; Fussell v. United States, 5 Cir., 100 F.2d 995.

To plaintiff's contentions that the procedure authorized by regulation and adopted here constitutes a violation of due process and is violative of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., appellee opposes the arguments, (1) that the act does not require a hearing, and (2) assuming that the provisions of Sec. 5 of the Administrative Procedure Act would apply though the action by the County Committee is not required to be based on the record of a formal hearing, nevertheless the first exception in Sec. 5 of the Act, that its provisions are not applicable to "any matter subject to a subsequent trial of the law and the facts de novo in any court," would preclude its application here.

We find ourselves in agreement with the position of appellee and the district judge.

█ As to appellant's first point, that the government failed by proper proof to show the normal yield, and on the evidence as a whole the determination thereof should have been left to the jury, we think it abundantly clear that the proof of the County Committee's determinations was complete and adequate. We think, too, that, considered in the light of the record as a whole, including especially the statement furnished the committee by the defendant and the testimony of defendant and his witnesses, which was in nowise in conflict with the committee's determination, there was no

---

3. (1) In general that the penalty is necessarily measured by the normal yield on the excess acreage which is a question of fact to be determined by a court and jury, and that the government failed by proper proof to show the normal yield.

(2) That the regulation under which the committee acted was in conflict with the statute.

(3) That the administrative action of the committee was not in accord with the Administrative Procedure Act in that no hearing was held in accordance with the

provisions of that Act in that the determination of normal yield had the effect of imposing a penalty as contemplated by the terms of that Act.

(4) That the purported establishment of normal yield was an administrative action for which no hearing was allowed either before or after the determination was made, and there was no right of appeal, and that the determination denied the defendant due process of law under the Federal Constitution.

basis in the evidence for a verdict contrary to the determination of the committee. This being so, unless appellant's attack upon the action of the committee, as taken pursuant to regulations which are themselves violative of the statute itself, or, if not, as a deprivation of due process because no opportunity was afforded him to be heard by the committee or to review its action, is well taken the judgment was right and should be affirmed.

A comparison of the language of the statute, note 2, supra, under which the regulations of the secretary were issued, with the regulations themselves [4] shows, we think, that this is not a realistic and reasonable, but a highly unrealistic and hypercritical approach. Conceding as he does that the language of the statute is sufficiently definite in the three elements to be considered in determining the normal yield, (1) abnormal weather conditions, (2) the normal yield for the county, and (3) the yield in the years in which the data are available, appellant, it seems to us completely misses the mark when he complains that instead of expressly providing, as the statute does, for a comparison of the farm under review "with other farms in the county", the regulations provide for a comparison of other farms in the locality which are similar with respect to soil and other physical factors affecting the production of peanuts.

In the first place, there is nothing in the regulations prohibiting the committee from following the statute by taking a general survey of the county, if that should be deemed advisable. But more important, in the second place, it seems that .in directing the committee's attention to the particular farms in the locality, the regulation is only directing doing what a committee would do under the statute anyway, starting with the county as a base, to endeavor to make the comparison as informative and accurate as possible by focusing it on the particular locality and similar farms.

 On his final point, that he has been deprived of due process by failure of the statute and regulations to afford him a hearing before the committee on the question of normal yield, the short and simple answer is the one given by the district court in his findings, that: "The Administrative Procedure Act is not applicable except in cases of 'adjudications required by statute to be determined on the record after opportunity for an agency hearing', 5 U.S.C.A. § 1004; or, as held in Wong Yang Sung v. McGrath, 339 U.S. 33 [70 S.Ct. 445, 94 L.Ed. 616], in cases of adjudications or hearings, the requirement for which has been read into the statute by courts on constitutional grounds."

Here, on the law and on the question of normal yield, which was the only fact question open for hearing, and with respect to which, at least, as actual yield entered into it, the appellant was better advised than any other person, he was offered a full trial de novo, with an opportunity to present the evidence and the law unhampered and unaffected by the action taken by the committee except as he was unable or unwilling to show that their determinations were capricious and arbitrary, or not based upon facts.

The judgment was right. It is affirmed.

---

4. As to new farms in 1949, the regulations provide:

"The normal yield for any new farm shall be that yield per acre which the county committee, with the assistance of the community committee, determines is normal for the farm, as compared with other farms in the locality which are similar with respect to soil and other physical factors affecting the production of peanuts." Sec. 729.25, 13 F.R. 7702.

For old farms, the 1950 regulations provide:

"The normal yield for any old farm shall be the average yield per acre of peanuts for the farm, adjusted for abnormal weather conditions, during the five calendar years immediately preceding the year in which the normal yield is determined. If for any such year the data are not available or there is no actual yield, then the normal yield for the farm shall be appraised by the county committee on the basis of the data which are available." Sec. 729.125, 14 F.R. 7614. Similar regulations were in effect in 1951 and 1953. Sec. 729.225, 15 F.R. 7294; Sec. 729.423, 17 F.R. 10616.