**W. J. USERY, Secretary of Labor, Plaintiff,**

v.

**WHIRLPOOL CORPORATION, Defendant.**

**Civ. No. C–74–359.**

United States District Court, N. D. Ohio, W. D.

June 21, 1976.

---

Mark D. Katz and Gregory B. Taylor, Dept. of Labor, Cleveland, Ohio, for plaintiff.

Robert E. Mann, Chicago, Ill., and E. Thomas Maguire, Toledo, Ohio, for defendant.

## OPINION

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

DON J. YOUNG, District Judge.

This cause is before the Court on a complaint filed by the Secretary of Labor against the Whirlpool Corporation (hereafter Whirlpool), pursuant to § 11(c) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 660(c)(1) (hereafter the ACT). The Secretary is seeking lost wages, expungement of written reprimands and injunctive relief for two Whirlpool employees who were allegedly discriminated against due to their refusal to subject themselves to possible serious injury or

death arising from a hazardous condition at their workplace.

There is little dispute over the facts in this case and, therefore, the Court will not dwell on them at great length. The defendant corporation maintains a facility at Marion, Ohio, where it manufactures household appliances. Present in the Marion plant are mechanical conveyors which are used to move parts from point to point within the plant. A guard screen is utilized in order to protect the employees working beneath the conveyor from the hazard of falling materials. Said guard screen is suspended approximately twenty feet above the plant floor and covers about 295,800 square feet hung under 65,000 linear feet of conveyor. The guard screen was suspended over about 36% of the total plant floor area.

It is among the duties of the maintenance department employees to clean the guard screen. This includes the removal of parts after they may have fallen from the conveyor and the placing of paper used to catch oil and grease drippings.

On June 28, 1974, a maintenance employee, George Cowgill, fell approximately twenty feet from the guard screen into a parts box. Hours after the accident, Mr. Cowgill died. An investigation by the Occupational Safety and Health Administration (hereafter OSHA) followed Mr. Cowgill's death. OSHA cited the defendant, charging a serious violation of the general duty clause of the ACT, 29 U.S.C. § 654. The citation required immediate abatement and proposed a $600.00 penalty. Said citation is being contested by the defendant in a matter now pending before the Occupational Safety and Health Review Commission.

The complainants in this case are also maintenance workers charged with the duty of cleaning the guard screen. On July 10, 1974, the complainants, Mr. Deemer and Mr. Cornwell, reported for work and were told by their foreman, Gale Price, to clean the guard screen except for three areas where he did not feel that screen was adequately supported to walk on. Upon receiving the order, the complainants refused to obey it, stating that they believed that the screen was unsafe. They were then taken to the office of the personnel director where they were issued written reprimands and sent home losing six hours pay.

The defendant attempted to prove at trial that the complainants walked off their jobs not because they felt it was unsafe, but rather because they wanted an increase in pay for performing such work. The Court, however, is not willing to accept this contention and expressly finds that the employees refused to perform the cleaning operation because of a genuine fear of death or serious bodily harm. This is supported by the fact that the foreman was not willing to allow them to use the Verta-lite procedure for cleaning the screen. Said procedure was an alternative to walking the screen developed after Mr. Cowgill's death. Furthermore, given that death, it is perfectly understandable that surviving employees would be reluctant to subject themselves to the possibility of a similar accident. The Court further finds that the threat of death or serious bodily harm was real and not something which existed only in the minds of the employees. While the defendant had begun to replace the original mesh panels of the screen with panels constructed of heavier gauge metal mesh having spiral wire connections, at the time in question only about one-third of the entire screen had been replaced. Certainly the fact that a man had fallen through the screen and been killed is the strongest possible evidence that it was unsafe and dangerous. Thus the Court finds that the job of cleaning the guard screen did present a danger of death or serious bodily harm.

The Secretary is complaining that the employees involved in this case are being discriminated against by the defendant as a result of exercising rights afforded to them under the Act. 29 U.S.C. § 660(c)(1) states:

No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is

about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

Pursuant to his authority under the Act to issue regulations, the Secretary promulgated 29 C.F.R. § 1977.12(b)(2), which states:

However, occasions might arise when an employee is confronted with a choice between [not] performing assigned tasks or subjecting himself to serious injury or death arising from a hazardous condition at the workplace. If the employee, with no reasonable alternative, refuses in good faith to expose himself to the dangerous condition, he would be protected against subsequent discrimination. The condition causing the employee's apprehension of death or injury must be of such a nature that a reasonable person, under the circumstances then confronting the employees, would conclude that there is a real danger of death or serious injury and that there is insufficient time, due to the urgency of the situation, to eliminate the danger through resort to regular statutory enforcement channels. In addition, in such circumstances, the employee, where possible, must also have sought from his employer, and been unable to obtain, a correction of the dangerous condition.

Under this regulation, it is clear that the employees were justified in walking off the job. The Court has held that there was no reasonable alternative and has further held that the employees' action was a good faith refusal to expose themselves to a dangerous condition. These findings, however, are not, by themselves, dispositive of this matter. The defendant argues that the regulation quoted above is clearly inconsistent with the statute and is thus invalid. This issue is the major question presented to the Court in this case.

Successfully challenging administrative regulations is a very difficult task. Once promulgated, regulations have the force of law and the presumption of validity. *United States v. Mersky,* 361 U.S. 431, 437–38, 80 S.Ct. 459, 4 L.Ed.2d 423.

When faced with a problem of statutory construction, this Court shows great deference to the interpretations given the statute by officers of the agency charged with its administration. "To sustain the Commission's application of the statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). The above-quoted language is especially true when the administrative procedure being challenged involves a contemporaneous construction of a statute by men charged with the responsibility of setting its machinery into motion. *Zuber v. Allen,* 396 U.S. 168, 192, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969). However, if the inconsistency between the regulation and the statute is so clear that the Court has no choice except to hold that the administrator has exceeded his authority and employed means that are not appropriate to the end specified in the Act, the Court must find the regulation invalid. *Gardner v. United States,* 239 F.2d 234 (5th Cir. 1956); *See also, Commissioner of Internal Revenue v. South Texas Lumber Company,* 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948).

This Court is of the opinion that the regulation in question is clearly inconsistent with the statute and therefore invalid. The reason for this holding is that the Congress squarely faced the issue as to whether or not employees should be permitted to leave the job when faced with a dangerous situation and decided that they should not.

When the Occupational Safety and Health Act was first reported out of committee in the House of Representatives, it contained a provision which would allow employees to absent themselves from a dangerous situation without a loss of pay. 116 Cong.Rec. 38,369, 38,377, 38,378 (1970). The sponsor of the bill in committee, Congressman Daniels of Kentucky, stated:

The provision on employees not losing pay was so generally misunderstood that

we have decided to drop it. We have no provision for payment of employees who want to absent themselves from risk of harm; instead, we have this amendment which enables employees subject to a risk of harm to get the Secretary into the situation quickly. Instead of making provisions for employees when their employer is not providing a safe workplace, we have strengthened the enforcement by this amendment provision to try and minimize the amount that employees will be subject to risk of harm. 116 Cong.Rec. 38,377, 78. (1970).

The bill, as originally reported out of committee, also contained a provision which would have permitted an OSHA inspector to close down a plant operation for up to 72 hours if he found that an imminent danger existed. 116 Cong.Rec. 38,369 (1970). This provision of the bill was also amended so that no shut-down could occur without the application and granting of a temporary restraining order by a federal district judge. Id. at 38,376. The version of the Act, as passed and approved by the Senate, however, did contain a provision allowing an inspector to close down an operation for 72 hours. In conference committee, however, the Senate receded. U.S.Code Cong. & Admin.News, 91st Cong.2d Sess., at p. 5236 (1970). Thus the imminent danger section of the Act as finally signed into law reads as follows:

(a) The United States district courts shall have jurisdiction, upon petition of the Secretary, to restrain any conditions or practices in any place of employment which are such that a danger exists which could reasonably be expected to cause death or serious physical harm immediately or before the imminence of such danger can be eliminated through the enforcement procedures otherwise provided by this chapter. Any order issued under this section may require such steps to be taken as may be necessary to avoid, correct, or remove such imminent danger and prohibit the employment or presence of any individual in locations or under conditions where such imminent danger exists, except individuals whose presence is necessary to avoid, correct, or remove such imminent danger or to maintain the capacity of a continuous process operation to resume normal operations without a complete cessation of operations, or where a cessation of operations is necessary, to permit such to be accomplished in a safe and orderly manner.

██ It is eminently clear then that in considering the best methods for dealing with imminent danger situations, Congress considered and rejected employees walking off the job with pay. They also rejected allowing an inspector to close down an operation. It is obvious that Congress considered the shut-down of an operation such a serious matter that nothing short of the judicial process with its full complement of due process protections was acceptable as a means of accomplishing it. Certainly allowing employees to simply walk off the job was not acceptable. See Dunlop v. Daniel Construction Company, Inc., No. C 75–26–N (N.D.Ga. filed Dec. 5, 1975).

Since the Court finds the regulation in question to be invalid, it will enter judgment for defendant. This opinion will serve as the Court's findings of fact and conclusions of law. Such findings moot the defendant's motion to dismiss which was filed just prior to trial.

For the reasons stated herein, good cause appearing, it is

ORDERED that the Court finds 29 C.F.R. § 1977.12(b)(2) to be invalid as inconsistent with the Occupational Safety and Health Act of 1970 and therefore finds in favor of the defendant and the clerk shall enter judgment for the defendant and the defendant shall go hence without day and collect its costs, and it is

FURTHER ORDERED that the motion to dismiss filed by the defendant should be, and it hereby is, overruled as moot.

IT IS SO ORDERED.