Ray MARSHALL, Secretary of Labor,
Plaintiff, Appellee,

v.

COMMONWEALTH AQUARIUM,
Defendant, Appellant.

No. 79–1276.

United States Court of Appeals,
First Circuit.

Argued Oct. 4, 1979.

Decided Dec. 13, 1979.

Roy D. Toulan, Jr., Boston, Mass., with whom Brown, Rudnick, Freed & Gesmer, Boston, Mass., was on brief, for defendant, appellant.

Ann D. Nachbar, Atty., U. S. Dept. of Labor, Washington, D. C., with whom Albert H. Ross, Regional Sol., Boston, Mass., Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Allen H. Feldman, Acting Counsel for Litigation and Charles I. Hadden, Acting Asst. Counsel for Appellate Litigation, of Washington, D. C., were on brief, for plaintiff, appellee.

Before ALDRICH and CAMPBELL, Circuit Judges, and BONSAL,* Senior District Judge.

* Of the Southern District of New York, sitting by designation.

**2**

LEVIN H. CAMPBELL, Circuit Judge.

Commonwealth Aquarium (Aquarium), a pet store, appeals a decision of the United States District Court for the District of Massachusetts finding it in violation of Section 11(c)(1) of the Occupational Safety and Health Act of 1970, (OSHA), 29 U.S.C. § 660(c)(1). That section provides:

"No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter."

This case arises from the discharge of Jeffrey Boxer as manager of Aquarium on May 15, 1976. The complaint filed by the Secretary of Labor alleged that Aquarium, acting through one of its owners, Richard Lerner, discharged Boxer because he had engaged in activity protected by OSHA by reporting a potential health hazard at the store to health and labor authorities.[1] The hazard was created by the likelihood that several birds in Aquarium's inventory had contracted psittacosis or "parrot fever," a respiratory ailment which may be fatal to humans.

In determining that Aquarium had violated Section 11(c), the district court followed the format laid out in *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The court found Boxer's notification of health and labor authorities to be "a significant and substantial proximate causative factor for [Aquarium's] decision to discharge him," and next determined that Aquarium had "failed to prove by a preponderance of the evidence that [it] would have discharged Boxer even in the absence of the protected activity." Aquarium now complains that "[w]hile Boxer's complaints to health and labor authorities may have been the 'last

straw' leading to the termination of his employment, which is not conceded," the evidence did not sufficiently demonstrate that Boxer's engaging in protected activity was a substantial factor precipitating his discharge. According to Aquarium, Boxer's discharge was the culmination of five months of employer dissatisfaction with his job performance.

■ Even, however, if we were so inclined, we would not be free to redetermine these matters. The district court's findings must stand unless clearly erroneous. *Cf. Sweeney v. Board of Trustees of Keene State College*, 604 F.2d 106 (1st Cir. 1979). Examination of the record indicates that the court's findings as to Aquarium's motivation in discharging Boxer are amply founded and not clearly erroneous.

Aquarium's next contention is that the district court altogether ignored certain evidence of purported legitimate business reasons for Boxer's discharge. In support of this, Aquarium isolates the following passage from the court's opinion:

"Apart from Lerner's testimony as to the deterioration of his relationship with Boxer prior to May 1976 which has been discussed and disbelieved above there is nothing in the record upon which the Court could base a finding that Lerner would have reached the same decision even in the absence of Boxer's complaints regarding the safety of his working conditions."

This passage is said to demonstrate a failure to consider, 1) the testimony of Martha Parks, an employee of Boston Pet, one of Aquarium's "sister" stores, which revealed that she had encountered some problems with Boxer concerning the joint ordering of birds and that she had related those problems to Lerner; and 2) a so-called list of grievances which, according to Lerner, he drew up some four months prior to Boxer's discharge, itemizing employer complaints with Boxer's performance.

---

1. The underlying incident is explored in detail by the district court. *See Marshall v. Commonwealth Aquarium*, 469 F.Supp. 690 (D.Mass.1979). Aquarium was sold by its owners approximately one year prior to trial.

The court's comment does not, however, compel the conclusion that it totally overlooked this evidence. Nothing else in the record or opinion suggests such an extraordinary oversight. All the court seems to have meant to say is that the other evidence of employer dissatisfaction was too weak to constitute the basis for a finding of legitimate discharge. This was a reasonable conclusion, given the court's express discrediting of Lerner. Martha Parks' testimony by itself scarcely indicated conduct serious enough to lead to discharge; and the undated grievance list was not only of questionable weight and significance, but depended largely on Lerner's rejected credibility. We do not, therefore, regard the court's statement as indicating more than a warranted, if imperfectly phrased, discrediting of defendant's evidence.

■■ Aquarium's final points concern the district court's exclusion of evidence allegedly relevant on the issue of Lerner's true motivation in firing Boxer. On direct examination Boxer had testified that after learning of the potential health hazard in the store he informed Lerner and suggested the taking of various precautions. Lerner, according to Boxer, responded by stating "Either conduct, just conduct business as usual or I will find somebody else who will conduct business as usual." Boxer further testified that Lerner similarly warned him on two subsequent occasions. Lerner, on taking the stand, denied threatening Boxer with discharge if he failed to conduct business as usual.[2] Lerner, however, did admit to having a discussion with Boxer concerning the feeding of birds. Lerner testified that "In the beginning of the psittacosis situation [Boxer] refused to water and feed the birds and I told him that I would get someone from Boston Pet to water and feed them, if he didn't do it." Lerner was questioned by Aquarium's counsel as to his intent in making that remark. The district court sustained an objection to this question despite counsel's insistence that intent was "one of the primary issues in this case." We would agree that in general, where a defendant's intent is in issue, he should be given latitude to testify concerning his intent, however much the court may think such testimony " 'rationalization.' " *Whiting v. United States*, 296 F.2d 512, 519 (1st Cir. 1961); *United States v. Hayes*, 477 F.2d 868, 873 (10th Cir. 1973); Wigmore, Evidence § 581 (3d ed. 1940). In the present case, however, Lerner testified at other times on the subject of his intent and, especially in the absence of an offer of proof, *see* Fed.R.Evid. 103(a)(2), we have no reason to believe that the excluded testimony would have been more than cumulative on the subject. *See* Fed.R.Evid. 403. We can discern no prejudice in any event.

■ Also on the subject of its intent, Aquarium argues that the district court erred in refusing to allow Linwood Murray, a social acquaintance of Mr. Lerner and an employee of Aquarium's "sister" store, to relay Lerner's version of a telephone conversation with Boxer. Boxer had testified that during this conversation he asked Lerner whether he was going to be laid off or fired. Lerner, on the other hand, testified

---

2. Aquarium suggests in its brief that:

"Even assuming the credibility of Boxer's own testimony that Lerner had admonished him that he would be fired if he did not conduct business as usual, those statements were, in each instance, directed at Boxer's reluctance to sell birds and not his complaints to health and labor authorities. Refusal to fulfill obligations as an employee, even in light of a potential or real health hazard, has been held not to constitute a protected activity."

To support this last proposition, Aquarium cites *Usery v. Whirlpool Corp.*, 416 F.Supp. 30 (N.D.Ohio 1976). In *Whirlpool* the district court held invalid a regulation promulgated by the Secretary of Labor which interpreted OSHA's retaliatory discharge provision as protecting an employee who reasonably withdraws from danger on the job where that employee has sought correction of the dangerous condition and where normal OSHA enforcement procedures would be inadequate. Without becoming involved in this issue, which is not essential to the resolution of the present case, we point out that Aquarium's reliance on *Whirlpool* is entirely misplaced since that decision was reversed by the Sixth Circuit. *Marshall v. Whirlpool Corp.*, 593 F.2d 715 (1979). *But see Marshall v. Daniel Construction Co.*, 563 F.2d 707 (5th Cir. 1977), cert. denied, 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978).

that Boxer requested that he be laid off in order that he might "do some fishing" over the summer. Both versions of the conversation had Lerner postponing any decision on the matter until later. Lerner further testified that at the end of the conversation he immediately related the entire contents verbatim to his wife and Linwood Murray, who had been present throughout the incident. During Murray's testimony, the following ensued:

"Q Could you tell us what happened after that telephone conversation terminated?

A [Mr Lerner] walked back from the phone and Midge and I were sitting on the couch.

Q Who is Midge?

A [Lerner's] wife.

[Counsel for the Department of Labor:] I will object to anything beyond this.

THE COURT: Any conversation would be hearsay

. . . . .

[Counsel for Aquarium]: Again, your Honor, I think we are dealing with the question of intent.

THE COURT: We maybe [sic] dealing with the question of intent, but I don't know any exception for hearsay on the issue of intent.

[Counsel for Aquarium]: I have no further questions."

In challenging this ruling, Aquarium points to Fed.R.Evid. 803(3) which provides,

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . . .

(3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."

Aquarium now insists that the court committed "prejudicial error" by reason of its "failure to follow the provisions of Rule 803(3)." In arguing this point, Aquarium labors under the difficulty that it made no offer of proof when Murray's testimony was refused. Thus, we can only consider the issue if the substance of the proposed testimony was apparent from the context within which the questions were asked, Fed. R.Evid. 103(a)(2).[3] Aquarium contends that since Lerner had already testified to the contents of the conversation and had stated that he had repeated the conversation verbatim to Murray, the substance of the proffered testimony was clear—Murray was simply going to restate what Lerner had related to him. We are not certain that such an inference is apparent from the record. Quite possibly some other exchange between Lerner and Murray was about to be offered. Even, however, if we assume the district court understood what Aquarium, on appeal, now says was coming (and should have realized that Rule 803(3) was being relied upon by defendants to justify admissibility), Aquarium's argument fails. Aquarium mistakenly equates a declarant's recounting of a previous conversation with a declarant's statement of then existing intent.[4] Rule 803(3) provides an exception merely for the latter. Were Rule 803(3) construed as suggested, it would undermine the operation of the hearsay rule in a wide

---

**3.** This is not a situation involving plain error "affecting substantial rights" of the challenging party. Fed.R.Evid. 103(d).

**4.** The recited telephone conversation did not itself contain a statement of Lerner's intent— the conversation was, at most, probative on the issue of intent, a different matter altogether. Nor is there any suggestion that Lerner, while relating the contents of the conversation to Murray, stated his then existing intent. We need not decide whether, had there been a clear statement of intent in the course of the telephone conversation or immediately thereafter, the recitation of the conversation would have been admissible under Rule 803(3). *Compare United States v. Annunziato*, 293 F.2d 373 (2d Cir.), *cert. denied* 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961).

variety of circumstances. The drafters of the Federal Rules reflected both awareness and rejection of this approach when they inserted the final phrase of Rule 803(3), excluding from the general exception statements "of memory or belief to prove the fact remembered or believed . . . ." *See* Advisory Committee Note to Fed.R. Evid. 803(3) (this exclusion is "necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind.") Here Aquarium would like to have had Mr. Murray testify to Lerner's statement of memory, that is, Lerner's recollection of the telephone conversation, in order to prove the fact remembered, *i. e.*, the contents of that conversation. This is among the type of testimony that the final phrase of Rule 803(3) was designed to preclude. The district court was, of course, wrong in disclaiming the existence of any hearsay exception on the issue of intent, but was entirely correct insofar as it may have recognized that an attempt to repeat the conversation would be hearsay.

*The judgment of the district court is affirmed.*