AMERICAN INDUSTRIAL HEALTH COUNCIL et al.

v.

Ray MARSHALL, as Secretary of Labor, et al.

SCURLOCK OIL COMPANY et al.

v.

Ray MARSHALL, as Secretary of Labor, et al.

AMERICAN IRON & STEEL INSTITUTE et al.

v.

Ray MARSHALL, as Secretary of Labor, et al.

Civ. A. Nos. H–80–144, H–80–145 and H–80–494.

United States District Court, S. D. Texas, Houston Division.

Aug. 5, 1980.

Robert C. Barnard, Cleary, Gottlieb, Steen & Hamilton, Washington, D. C., for plaintiffs American Industrial Health Council, et al.

Steven C. Oaks, Butler, Binion, Rice, Cook & Knapp, Houston, Tex., for plaintiffs Scurlock Oil Co., et al.

Dana G. Kirk, Fulbright & Jaworski, Houston, Tex., for plaintiffs American Iron & Steel Institute, et al.

Diane E. Burkley, U. S. Dept. of Labor, Washington, D. C., for defendants.

## ORDER

CARL O. BUE, Jr., District Judge.

Among the motions pending before the Court are three which are integrally relat-ed: (1) in Civil Action No. H–80–144, plaintiffs' motion for declaratory judgment that this Court has jurisdiction; (2) in Civil Action No. H–80–145, plaintiffs' motion for partial summary judgment that this Court has jurisdiction; and (3) in Civil Action No. H–80–144, defendants' motion to stay proceedings pending resolution of the jurisdictional issue in the appellate courts. For the reasons stated herein, the Court concludes that all three motions must be denied, and the cause dismissed for want of subject matter jurisdiction.

Pursuant to sections 6(b), 8(c) and 8(g) of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651 *et seq.* (1975) (the Act), the Secretary of Labor (Secretary) issued a generic occupational health standard for the identification, classification and regulation of potential carcinogens on January 18, 1980. Formal publication in the Federal Register followed on January 22, 1980. 45 Fed.Reg. 5001 (January 22, 1980). The American Industrial Health Council (AIHC) and the American Petroleum Institute (API) each filed petitions to review the generic cancer standard in the United States Court of Appeals for the Fifth Circuit on January 18, 1980. On the same date AIHC and API filed complaints for declaratory and injunctive relief in this Court. Also on January 18, 1980, the American Federation of Labor and Congress of Industrial Organizations (AFL–CIO) filed a petition for review in the United States Court of Appeals for the District of Columbia Circuit. Subsequently, all causes filed in this Court (H–80–144, H–80–145, H–80–494) were consolidated under the number and style of *American Industrial Health Council, et al. v. Marshall, et al.,* Civil Action No. H–80–144.

Jurisdiction to review Section 6(b) standards, 29 U.S.C. § 655(b) (1975), is vested in the courts of appeals by Section 6(f) of the Act, 29 U.S.C. § 655(f) (1975).[1] Accord-

1. "Any person who may be adversely affected by a standard issued under this section may . . . file a petition challenging the validi-ty of such standard with the United States court of appeals for the circuit wherein such person resides or has his principal place of

ingly, the issue before the Court is whether the cancer policy is a Section 655 standard, as defendants contend it is, or a regulation promulgated pursuant to Section 657(g)(2), as plaintiffs contend. Inasmuch as Section 657 does not vest jurisdiction to review rules and regulations in a particular court, if the generic cancer policy is a regulation, it properly is reviewable in this Court.[2] *See In re School Board of Broward County, Florida*, 475 F.2d 1117, 1119 (5th Cir. 1973).

A standard is defined in Section 3(8) of the Act: "The term 'occupational safety and health standard' means a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8) (1975).

Plaintiffs contend that in order for the policy to be denoted a "standard" pursuant to the definition, it must impose enforceable legal obligations on identifiable employers to take concrete measures to reduce a specific hazard to employees. Plaintiffs assert that the policy at issue imposes no enforceable obligations on anyone, and that it therefore is nothing more than a set of general regulations which establish procedures and evidentiary rules to govern future enactment of standards.[3]

The Court finds the plaintiffs' contentions unpersuasive. Although the cancer policy imposes procedures whereby the Secretary will issue substance–specific standards in the future, it also establishes binding substantive limitations on the Secretary and on industry.[4] *See, e. g., Bethlehem*

---

business, for a judicial review of such standard." 29 U.S.C. § 655(f) (1975).

**2.** Defendants point out that the Act specifically provides for review in district courts of only two actions: (1) when the Secretary charges an employer with discriminating against an employee for exercising his rights under the Act, 29 U.S.C. § 660(c)(2); and (2) when the Secretary seeks an injunction against conditions or practices in any place of employment which present *an imminent danger of death or serious physical harm*, 29 U.S.C. § 662(a), (b). The Court finds, however that in the absence of a specific statutory grant of jurisdictional power regarding regulations, they also would be reviewable in the district courts, pursuant to the Administrative Procedure Act. *In re School Board of Broward County, Florida*, 475 F.2d 1117, 1119 (5th Cir. 1973).

**3.** The plaintiffs rely in part on the agency's characterization of the policy as a "regulation". The Court concludes that "regulation" was used in the instant policy much as the term has been used in other contexts involving OSHA "standards", *see, e. g., Nat. Indus. Constructors v. OSHRC*, 583 F.2d 1048, 1050–52 (8th Cir. 1978); *National Constructors Ass'n v. Marshal*, 581 F.2d 960, 972 (D.C.Cir.1978), *aff'd*, 593 F.2d 1371 (D.C.Cir.1979). Moreover, the Secretary concluded that this generic approach to standard-setting is a method which is necessary and reasonable *for regulation of occupational carcinogens*. 45 Fed.Reg. at 5014; *see* 29 U.S.C. §§ 652(8), 655(b)(5). The Secretary further concluded that the standard at issue is "an occupational safety and health standard within the meaning of the Act." 45 Fed.Reg. at 5015; *see* 29 U.S.C. § 652(8). In such circumstances, the agency's use of the term "regulation" can-

not foreclose a finding that the instant policy is a standard.

Plaintiffs urge that the conclusion that the instant policy is a regulation rather than a standard is confirmed by the decision in *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 100 S.Ct. 883, 63 L.Ed.2d 154 (1980), wherein the Supreme Court upheld a regulation as an exercise of the Secretary's rulemaking power pursuant to 29 U.S.C. § 657(g)(2). Plaintiffs assert that the similarity of the Secretary's announcing intended action to be taken against employers in the *Whirlpool* regulation and the instant generic policy is the decisive factor in determining that the instant policy is a general regulation. The Court finds that assertion unpersuasive. The *Whirlpool* regulation apparently was promulgated pursuant to the authority of only Section 657(g)(2), and the character of the regulation was not at issue in the *Whirlpool* litigation. *See Usery v. Whirlpool Corp.*, 416 F.Supp. 30, 33 (N.D.Ohio W.D.1976), *rev'd and remanded sub nom. Marshall v. Whirlpool Corp.*, 593 F.2d 715 (6th Cir. 1979), *aff'd*, 445 U.S. 1, 100 S.Ct. 883, 63 L.Ed.2d 154 (1980), in which the District Court observed the following: "Pursuant to his authority under the Act to issue regulations, the Secretary promulgated [the challenged regulation]." *Id.* at 33. In contrast, the Secretary promulgated the instant policy pursuant to the authority of Section 655(b) as well as Section 657(g)(2).

**4.** *See Virginia Elec. & Power Co. v. Costle*, 566 F.2d 446 (4th Cir. 1977) wherein the Court considered whether the courts of appeals had jurisdiction to review a regulation promulgated pursuant to the Federal Water Pollution Act Amendments of 1972. The plaintiffs argued

*Steel Corp. v. Occupational Safety and Health Review Commission*, 573 F.2d 157, 161 (3rd Cir. 1978) ("The purpose of OSHA standards is to improve safety conditions in the working place, by telling employers just what they are required to do in order to prevent or minimize danger to employees.") *id.* at 161. For example, the generic cancer policy requires that exposure conditions for Category I toxic substances shall be limited to the lowest feasible level and that engineering and work practice controls must be adopted as the primary means of compliance. *See* § 1990.142, 45 Fed.Reg. at 5286. These requirements are binding; their validity may not be challenged in subsequent proceedings unless the cancer standard is amended. *See* 45 Fed.Reg. at 5214. The generic standard further establishes binding

criteria for identification, classification and regulation of potential occupational carcinogens. § 1990.112, 45 Fed.Reg. at 5284. Those criteria are not subject to relitigation. 45 Fed.Reg. at 5214.[5] The Court finds that the cancer policy is a nationally applicable standard addressed to regulation of toxic substances; further, the determinations underlying promulgation of the standard are essentially the same as those underlying other standards promulgated by the agency.[6]

Moreover, although an agency cannot prescribe a court's jurisdiction by the characterization of a given policy, the Secretary issued the instant policy pursuant to Section 6(b), 29 U.S.C. § 655(b), *inter alia*,[7] and concluded that it constitutes a standard within the meaning of the Act;[8] his deci-

---

that the presumptively applicable regulation could be rebutted on a case-by-case basis; that it therefore could not be deemed applicable prior to adoption in an individual permit proceeding; and accordingly, that it could not be deemed reviewable by the courts of appeals. The Court found that the regulation which was in part binding and in part presumptively applicable, was nonetheless within the jurisdiction of the courts of appeals. *Id.* at 449–450. The plaintiffs further argued that the regulation did not constitute a limitation for jurisdictional purposes because it was intended merely to provide guidance to the permit issuer. The Court found the regulation mandatory in that it required certain information to be considered in future determinations. *Id.* at 450. *See also American Iron and Steel Institute v. Environmental Protection Agency*, 543 F.2d 521, 525, 526 (3rd Cir. 1976), wherein the Court agreed with the EPA that the regulations at issue were not reviewable in the courts of appeals as "effluent limitations", in part because the agency cited no sections of the Act pertaining to effluent limitations as authority for promulgating the regulations, and the agency asserted that the regulations did no more than prescribe the policy and procedures to be followed in connection with applications for permits.

5. The standard also establishes procedures for setting priorities and making them public. *See* §§ 1990.131–.132, 45 Fed.Reg. at 5285. The cancer policy is applicable to all industries covered by the Act, 45 Fed.Reg. at 5004, and specifies regulatory requirements which must be incorporated into substance-specific standards promulgated in subsequent rulemakings. *See, e. g.*, § 1990.142(a)(2)(iii), (a)(3)(iii), 45 Fed. Reg. at 5286; § 1990.142(b)(3)(iii), 45 Fed.Reg. at 5260–61; § 1990.142(a)(2)(i), (a)(3)(i), (b)(3)(i), 45 Fed.Reg. at 5217, 5286.

6. Those determinations may be described as follows: (1) evaluation of the potential health hazard associated with particular substances; (2) assessment of what kinds of protections must be invoked to guard against the health hazard, and how stringent the protections must be; and (3) determination of what level of exposure is feasible for industry compliance. The language of Section 6(f) of the Act indicates that underlying determinations are integral components of standard setting by the provision that in court of appeals' review of standards "[t]he determinations of the Secretary shall be conclusive if supported by substantial evidence in the record considered as a whole." 29 U.S.C. § 655(f).

7. The policy was issued also in reliance on Sections 8(c) and 8(g) of the Act, 29 U.S.C. § 657(c), (g), which provisions do not vest jurisdiction in the courts of appeals. The Court observes that inasmuch as the Secretary relied in part on Section 6(b), which specifies that review must be had in the courts of appeals, reliance on the other provisions will not defeat jurisdiction in the courts of appeals. *See, e. g., Virginia Elec. & Power Co. v. Costle*, 566 F.2d 446, 450 (4th Cir. 1977); *American Meat Institute v. Environmental Protection Agency*, 526 F.2d 442, 448 (7th Cir. 1975); *American Petroleum Institute v. Train*, 526 F.2d 1343, 1345–46 (10th Cir. 1975).

8. Refer to note 3, *supra*. In conjunction with concluding that the generic cancer policy constituted an occupational safety and health standard, the agency followed the notice and hearing requirements specified in Section 655(b) and the procedural regulations of the Act, 29 C.F.R. § 1911, 36 Fed.Reg. 17507 (September 1, 1971).

sion is entitled to some deference. *See American Iron & Steel Institute v. Environmental Protection Agency*, 543 F.2d 521, 526 (3rd Cir. 1976); *cf. Chamber of Commerce of the United States of America v. Occupational Safety and Health Administration*, No. 78–2221 (D.C.Cir. July 10, 1980) (concerning whether a regulation promulgated pursuant to 29 U.S.C. § 657(g)(2) (1976) is legislative or interpretive, "administrative agency's own label is indicative but not dispositive . . . ." slip op. at 9); *Lubrizol Corp. v. Environmental Protection Agency*, 562 F.2d 807, 816 n.23 (D.C. Cir.1977) (in determining validity of agency regulation Court notes that agency's definition is due less deference when the issues in question have a legal rather than a technical or industrial hue).

The Court concludes that the cancer policy at issue is an occupational safety and health standard within the meaning of Section 652(8).[9] *See Colautti v. Franklin*, 439 U.S. 379, 392 n.10, 99 S.Ct. 675, 684 n.10, 58 L.Ed.2d 596 (1979); *Virginia Elec. & Power Co. v. Costle*, 566 F.2d 446 (4th Cir. 1977); *Lubrizol Corp. v. Environmental Protection Agency, supra; National Asphalt Pavement Ass'n v. Train*, 539 F.2d 775, 779 n.1 (D.C. Cir.1976); *cf. Chamber of Commerce of the United States of America v. Occupational Safety and Health Administration, supra* (in discussing differences between legislative and interpretive rules, both of which may be promulgated pursuant to 29 U.S.C. § 657(g)(2) (1976), Court observed that the effect of a legislative rule is to implement the Act, slip op. at 11). Accordingly, jurisdiction lies in the courts of appeals. Further, the Court concludes that the generic standard is so closely related to substance-specific standards which will be promulgated that it is

part of a unitary process of setting standards; accordingly, "it would be anomalous to have their review bifurcated between different courts." *Virginia Elec. & Power Co. v. Costle, supra*, at 450. *See also, DuPont v. Train*, 430 U.S. 112, 136, 97 S.Ct. 965, 979, 51 L.Ed.2d 204 (1977); *Lubrizol Corp. v. Environmental Protection Agency, supra*, at 814. *Cf. Crown Simpson Pulp Co. v. Costle*, 445 U.S. 193, 194–197, 100 S.Ct. 1093, 1094–95, 63 L.Ed.2d 312, 315–16 (1980) (per curiam) (when 33 U.S.C. § 1639(b)(1)(F) vests review of EPA issuance or denial of permit in courts of appeals, EPA objection to state-issued permit also must be reviewable in courts of appeals pursuant to that provision, rather than in district courts; otherwise permits would be reviewable at different levels of federal courts depending on fortuitous circumstance of whether the state in which the case arose was authorized to issue permits, a construction of the Act which would create a seemingly irrational bifurcated system).

Defendants urge this Court not to decide whether it has jurisdiction, but instead, to stay said decision pending resolution of the issue by the courts of appeals. The Court, however, has an obligation to determine whether it has subject matter jurisdiction. *See, e. g., Marshall v. Gibson's Products, Inc.*, 584 F.2d 668, 671–72 (5th Cir. 1978).

Moreover, the question of jurisdiction currently is not directly before any circuit court. Although petitions to review in this and similar actions have been filed in several courts of appeals, the issue for initial determination in those courts is one of venue.[10] The Court has concluded it is without

---

9. Defendants contend that the issue of whether the agency had the statutory authority to promulgate the policy in question must be addressed as part of the inquiry regarding jurisdiction. The Court finds that the policy fits within the statutory definition of "standard", and further finds that resolving the issue of the agency's statutory power is unnecessary for purposes of determining jurisdiction. *See, e. g., American Petroleum Institute v. Train*, 526 F.2d 1343, 1346 (10th Cir. 1975).

10. Plaintiffs' attorneys have informed the Court that no party has requested a ruling on the jurisdictional issue in any of the courts of appeals in which actions relating to this cause are pending. A question of venue is before the Fifth Circuit and the District of Columbia Circuit, and the latter court has stated that it will defer to the Fifth Circuit on the venue question. Proceedings in the Seventh Circuit have been held in abeyance pending the resolution of the

jurisdiction of the subject matter of this litigation and perceives no reason to postpone entry of an order reflecting said determination. *See Central Hudson Gas & Electric Corp. v. United States Environmental Protection Agency*, 587 F.2d 549, 557 (2d Cir. 1978).

Accordingly, the instant motions are denied and plaintiffs' complaints hereby are dismissed for want of jurisdiction.

venue question in the Fifth and District of Columbia Circuits. In addition, petitioners in the Fifth Circuit have urged that Court not to decide the venue question until this Court has decided the jurisdictional issue. A petition to review in a related case was filed in the Third Circuit on February 15, 1980; to date no action has been taken in that proceeding. Plaintiffs' Status Memorandum (June 13, 1980). This Court concludes that resolution of the jurisdictional issue is appropriate to avoid further delay in any of the related actions.