## No. 79SC9

**Durango School District No. 9-R, the Board of Education of Durango School District No. 9-R, and Donald Bushnell, Marvin Giersch, Sam Callaway, Larry Bruton, Gino Picolli, Robert Ashburn and J. C. Brasher, individually and as Directors of said District v. John Thorpe**

(614 P.2d 880)

Decided July 21, 1980.

Hamilton, Hamilton, Shand & McLachlan, P.C., E. B. Hamilton, for petitioners.

Hobbs and Waldbaum, P.C., Larry F. Hobbs, Douglas B. Koff, for respondent.

Miller & Swearingen, Reese Miller, Richard B. Wagner, for amicus curiae, Colorado Association of School Boards

*En Banc.*

JUSTICE ROVIRA delivered the opinion of the Court.

We granted certiorari to review the decision of the Colorado Court of Appeals in *Thorpe v. Durango School District No. 9-R et al.,* 41 Colo. App. 473, 591 P.2d 1329 (1978). We now affirm the judgment of the appellate court.

## I.

The respondent, John Thorpe, was a non-tenured teacher employed by the petitioner Durango School District No. 9-R during the 1974-1975 and 1975-1976 school years. In April 1976, the district did not renew the respondent's teaching contract for the 1976-1977 school year. He brought suit against the petitioners (the school district, its board of education, and the members of the board) under 42 U.S.C. § 1983 (1976),[1] alleging that the district had failed to renew his teaching contract "in retaliation for" specified activities for which he claimed protected status under the First and Fourteenth Amendments to the United States Constitution. The respondent alleged violations of his rights to free speech, academic freedom, and freedom of association.

Trial was held to a jury. The evidence showed that the respondent had been employed by the district as a mathematics teacher for the 1974-1975 school year and that his contract had been renewed for 1975-1976. During this two-year period, the respondent became active in the affairs of the Durango Education Association (DEA), a teachers' organization which represented its members in dealing with the board of education.

---

[1] Section 1983 provides:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
The court of appeals correctly noted that state courts exercise concurrent jurisdiction with federal district courts over suits brought to enforce § 1983. *Young v. Board of Education,* 416 F.Supp. 1139 (D.Colo. 1976).

In the spring of 1975, the respondent was elected to represent the faculty of Miller Junior High School on the executive board of the DEA. His duties in that position were to act as liaison between the faculty and the DEA, collecting dues and informing the faculty of decisions made by the DEA board.

In the fall of 1975, the DEA and the board of education were engaged in negotiations relating to salaries and working conditions. The respondent was asked to become the DEA "crisis committee" chairman. In that position, he helped to coordinate communications among the teachers and to the public.

In the spring of 1976, the board of education considered whether the respondent should be offered a contract for the 1976-1977 school year. After reviewing the matter at two separate meetings, the board decided not to renew the contract.

Five of the seven members of the board who participated in the nonrenewal decision testified at trial. They acknowledged that they had discussed the respondent's DEA activities during their deliberations about renewing his contract, but denied that their votes against renewal had been motivated, or substantially influenced, by the respondent's membership in that organization *per se*. Rather, the board members testified that they had considered only those DEA activities which they considered "improper," *viz.*: (a) an incident in which the respondent had exhorted his fellow teacher and DEA member, Dianne Edison, to participate in a DEA leafletting program; and (b) a second incident in which the respondent had urged payment of DEA dues by teacher Laddie John, perceived by John as an implied threat that his sabbatical leave would be jeopardized by failure to pay the dues. These incidents are discussed more fully in Part III of this opinion, *infra*.

The board members testified that the nonrenewal decision had also been influenced by reports that the respondent was impatient with slow students, that he had publicly embarrassed several students and had been the subject of numerous parental complaints, and that he had on one occasion improperly rescheduled a flag football practice session.

The trial court instructed the jury[2] that:

"a school board may not base a decision to non-renew a teacher on his constitutionally protected conduct.

"The right of public school teachers to join, work for and speak out on behalf of an employee organization, such as the Durango Educational Association, is protected by the United States Constitution, so long as such conduct does not actually, substantially and materially interfere with the

---

[2] The trial court's instruction has not been challenged on appeal. It is consistent with the analysis in Parts II-IV of this opinion, *infra*.

proper function of the school.

"In this case, if the [respondent] proves that his constitutionally protected conduct was a motivating factor in [petitioners'] decision not to rehire him, then your verdict must be for the [respondent], unless the [petitioners] prove one of the following affirmative defenses:

"(1) That the [respondent's] conduct caused an actual, substantial and material interference with the appropriate function of the school; or

"(2) That the [respondent] would have been nonrenewed in any event for some other reason unrelated to the constitutionally protected conduct."

The jury returned a verdict for the respondent. However, on the petitioners' motion, the trial court entered a judgment notwithstanding the verdict, *see* C.R.C.P. 50(b), stating that: (a) as a matter of law, there was no evidence from which the jury could properly have concluded that the petitioners considered any constitutionally protected activities of the respondent in arriving at their decision to not renew his teaching contract; and (b) the respondent's DEA activities were not a substantial or motivating factor in the petitioners' nonrenewal decision.

The court of appeals reversed, holding that the trial court had erred in granting the judgment notwithstanding the verdict, because there was sufficient evidence in the record to sustain the jury's verdict. We agree.

## II.

█ A nontenured public school teacher does not have a right to annual renewal of his teaching contract. In order to effect nonrenewal, the board of education need only give the teacher written notice on or before April 15 of the school year immediately preceding that for which renewal is in question. No specification, proof, or reasons for nonrenewal are required. *See* section 22-63-110, C.R.S. 1973. Nonetheless, the board may not base its decision not to renew a teacher's contract on his or her exercise of constitutionally protected rights. *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Franklin v. Atkins,* 409 F.Supp. 439 (D.Colo. 1976), *aff'd.,* 562 F.2d 1188 (10th Cir. 1977).

█ In this case, the respondent claims that the nonrenewal of his teaching contract was constitutionally impermissible under *Perry v. Sinderman* and *Pickering v. Board of Education, supra,* because it was based on speech and association protected by the First and Fourteenth Amendments. That claim is governed by *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).[3] In *Mt. Healthy,* the United States Supreme Court held

---

[3] The United States Supreme Court has recently reaffirmed its *Mt. Healthy* analysis. *See Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

that: (a) a plaintiff in the respondent's position has the burden to show that his conduct was constitutionally protected and that it was a "substantial" or "motivating" factor in his employer's decision not to renew his employment; and (b) if the plaintiff makes this initial showing, the employer may avoid liability by demonstrating "by a preponderance of the evidence that it would have reached the same decision as to [plaintiff's] reemployment even in the absence of the protected conduct." *Id.*, 429 U.S. at 287, 97 S.Ct. at 576, 50 L.Ed.2d at 484.

Under *Mt. Healthy,* the jury in this case was properly instructed that it was required to determine: (1) whether constitutionally protected conduct on the respondent's part had been considered by the board of education when it decided not to renew his teaching contract; (2) whether such conduct, if considered by the board, had been a substantial or motivating factor in the nonrenewal decision; and (3) whether the board of education would have voted not to renew the contract even if it had not considered constitutionally protected conduct.

### III.
#### *Constitutional Protection for the Respondent's Conduct*

As noted in Part I of this opinion, *supra,* during their deliberations with respect to the respondent's teaching contract, the members of the board of education considered reports of incidents which had occurred between the respondent and two of his fellow teachers. The evidence presented at trial as to the nature of those incidents was in conflict. However, the question of what had actually transpired between the respondent and his fellow teachers was clearly one of fact, and our examination of the record convinces us that the evidence was sufficient to justify the submission of the question to the jury. Therefore, on the petitioners' motion for a judgment notwithstanding the verdict, the trial court was required to view the evidence concerning this factual issue in the light most favorable to the respondent, making every reasonable inference which could legitimately be drawn from the evidence in his favor.

*Hollinger v. Mutual Benefit Life Insurance Company,* 192 Colo. 377, 560 P.2d 824 (1977); *Alexander v. First National Bank in Fort Collins,* 169 Colo. 252, 455 P.2d 861 (1969); *Roberts v. Bucher,* 41 Colo. App. 138, 584 P.2d 97 (1978), *rev'd. on other grounds,* 198 Colo. 1, 595 P.2d 239 (1979). When evaluated pursuant to this standard, the evidence supports the following version of the incidents which occurred between the respondent and his colleagues Diane Edison and Laddie John.

*The Dianne Edison incident.* In October 1975, during a lunch break, the respondent engaged in a discussion with several DEA members, including Dianne Edison, concerning a plan to publicly distribute leaflets containing information about ongoing salary negotiations between the DEA and the board of education. The respondent assumed that everyone present approved of the plan. Dianne Edison, however, indicated that she did not approve, and she and the respondent engaged in a brief discussion about her unwillingness to participate in the leafletting program. Later in the day, after school hours, the discussion was resumed, and the respondent vigorously urged Edison to reverse her position, stating that it would not be in her best interests to be "singled out" by the board of education as "being different." Edison was upset by the discussion and "ended up . . . in tears."

*The Laddie John incident.* Laddie John had not paid his DEA dues, and, during a lunch period, the respondent initiated a discussion with him on the subject. The respondent asserted that John had a contractual obligation to pay the dues, and John stated that he had previously dropped his DEA membership. John asked whether his refusal to pay DEA dues would affect his application for sabbatical leave, scheduled to be decided by a committee composed primarily of DEA members. In response, the respondent stated that "it was best if we all got along under the trying circumstances we were under." The respondent himself had no authority with respect to the sabbatical proposal and did not intend his statement as a threat that the proposal would not be approved if John did not pay his dues. Nonetheless, John perceived the respondent's remark as an implied threat to that effect.

■ In granting the petitioners' motion for a judgment notwithstanding the verdict, the trial court implicitly concluded that the respondent's above-described speech activities did not come within the free speech protections of the First and Fourteenth Amendments. The sufficiency of the evidence to support a jury finding as to whether the respondent's speech activities were entitled to constitutional protection was an issue of law, appropriate for determination on a reserved basis by the trial court under C.R.C.P. 50(b). *See Wheeler & Lewis v. Slifer,* 195 Colo. 291, 577 P.2d 1092 (1978). *Accord, Pickering v. Board of Education,* 391 U.S. 563, 578-579 n. 2, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Franklin v. Atkins,* 409 F.Supp. 439 (D.Colo. 1976), *aff'd.,* 562 F.2d 1188 (10th Cir. 1977). In our view, however, the issue was wrongly decided by the trial court.

■ Constitutional protection *vel non* for the respondent's speech activities depends on the balance between:

"the interest of the teacher, as citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

*Pickering v. Board of Education, supra,* 391 U.S. at 568, 88 S.Ct. at

1734-1735, 20 L.Ed.2d at 817.

The balance will be struck in favor of the latter interest when it is demonstrated that the teachers' speech activities constitute a material or substantial interference with the teaching program, appropriate discipline, or the rights of others. *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Franklin v. Atkins, supra.* In the instant case, there was a complete failure of proof in this regard. The petitioners' theory at trial was that the respondent's speech activities had so upset Dianne Edison and Laddie John that their respective abilities to teach in the classroom were diminished. However, neither Edison nor John, nor any other witness, testified to this effect. No showing was made that the respondent's speech had engendered the sort of "disharmony among coworkers" which would remove it from constitutional protection under *Pickering v. Board of Education, supra. C.f. Los Angeles Teachers Union v. Los Angeles City Board of Education,* 71 Cal.2d 551, 455 P.2d 827, 78 Cal.Rptr. 723 (1969) (under *Pickering v. Board of Education,* the "government has no interest in preventing the sort of disharmony which inevitably results from the mere expression of controversial ideas") *with Lefcourt v. Legal Aid Society,* 312 F.Supp. 1105 (S.D.N.Y. 1970), *aff'd.,* 445 F.2d 1150 (2d Cir. 1971) (employee's speech activities held to have had a "definite [negative] impact on the internal operation" of the public service office in which he was employed).

■ We therefore hold that the trial court erred in concluding that the respondent's speech activities in connection with the Dianne Edison and Laddie John incidents did not come within the protection of the First and Fourteenth Amendments.

## IV.

■ Implicit in the jury's verdict for the respondent are findings, within the analysis of *Mt. Healthy, supra,* that the board of education's consideration of the respondent's constitutionally protected speech activities was a substantial or motivating factor in the board's decision not to renew the respondent's teaching contract, and that the board of education would not have made that decision had it not considered the protected activities. These questions of causation are issues of fact appropriate for jury determination. *See Marshall v. Commonwealth Aquarium,* 611 F.2d 1 (1st Cir. 1979); *Brule v. Southworth,* 611 F.2d 406 (1st Cir. 1979). The evidence in this case was not such that no reasonable juror could decide these issues against the petitioners, when viewing the evidence in the light most favorable to the respondent and making every reasonable inference in his favor. *Hollinger v. Mutual Benefit Life Insurance Company, supra; Alexander v. First National Bank in Fort Collins, supra; Roberts v. Bucher, supra.* Therefore, with respect to the *Mt. Healthy* causation issues, the trial court's entry of a judgment notwithstanding the

verdict was not justified.

## V.

In order to facilitate trial court and appellate review of jury verdicts in future cases of this nature, we encourage the use of written interrogatories, as authorized by C.R.C.P. 49, with respect to the issues of fact involved in the *Mt. Healthy* analysis.

We affirm the judgment of the court of appeals which reversed the trial court's entry of a judgment notwithstanding the verdict.

JUSTICE ERICKSON and JUSTICE DUBOFSKY do not participate.