Louise VIGODA d/b/a Tower Associates, Plaintiff-Appellant,

v.

DENVER URBAN RENEWAL AUTHORITY, and Alex Holland, Sterling Kahn, Marian Hurwitz, Omar Blair, V. P. Cline, Thomas J. Gargan, John W. Hall, Mary Baca, Robert J. Holton, J. B. Jobe, and Walter Emery, as the Board of Commissioners of the Denver Urban Renewal Authority, Defendants-Appellees.

No. 79CA1077.

Colorado Court of Appeals, Div. I.

Aug. 14, 1980.

Rehearing Denied Sept. 18, 1980.

Certiorari Granted Feb. 9, 1981.

George L. Vamos, Denver, for plaintiff-appellant.

Conover, McClearn, Heppenstall & Kearns, Frederic K. Conover, II, Michael S. McCarthy, Denver, for defendants-appellees.

COYTE, Judge.

Plaintiff appeals the judgment of the trial court entering summary judgment in favor of defendants and dismissing the amended complaint. We affirm in part and reverse in part.

This action arose out of plaintiff's unsuccessful attempt to execute a contract with defendant Denver Urban Renewal Authority (DURA) for the sale and redevelopment of the Daniels and Fisher Tower. During the summer of 1977, DURA invited members of the public to submit offers pertaining to a 90-day exclusive right to negotiate the terms of a redevelopment contract. On December 1, 1977, DURA accepted plaintiff's offer to negotiate a proposal to convert the Tower into residential condominiums and a restaurant facility.

Under the terms of the offer, the proposal would be irrevocable for 90 days or "upon such earlier date as the authority may reject this offer in writing." By written agreement, the parties could extend the irrevocable period of the offer. If DURA failed to approve plaintiff's redevelopment proposal within 90 days, if DURA rejected the proposal in writing, or if DURA did not finally accept the proposal by execution of a Redevelopment Agreement, then DURA would return to plaintiff her $7,268 deposit and no rights to specific performance or in the nature of equitable conversion would arise. In addition, plaintiff would submit to DURA all findings, determinations, studies, and reports undertaken in connection with the negotiations.

The DURA Resolution accepting the Offer to Negotiate specified substantial completion of the project on or before September 1, 1978. On January 10, 1978, plaintiff received DURA's Proposal for Sale of Land for Redevelopment which specified full completion of the project on or before Sep-

tember 1, 1978. On January 27, 1978, plaintiff informed DURA that she would not be able to fully complete the project by September 1, 1978, and she scheduled a February 9, 1978, meeting with DURA to discuss the matter.

At that meeting, DURA's Commissioners (Commissioners) refused to discuss the project completion date. Instead, they commented upon plaintiff's public criticism of the proposed design of the hotel complex to be constructed adjacent to the Tower. Since plaintiff had commented that the hotel design might jeopardize the feasibility and the "financiability" of her proposed project, the Commissioners required plaintiff to submit, by March 9, 1978, evidence of available financing for the project and of her intention and her capability to complete the project.

The Commissioners then scheduled a meeting to take place on March 9, 1978, to discuss completion of the project. However, on March 8, 1978, plaintiff was notified that the meeting had been cancelled. Nonetheless, the Commissioners requested the information regarding the feasibility of the project. Plaintiff submitted evidence of a local bank's commitment to work with plaintiff to finance the project subject to several contingencies. Plaintiff's response to the inquiry regarding the viability of the project was that she was "unable to assess the total situation," but that she was continuing as though there were no problems.

The Commissioners apparently had requested information beyond the 90-day period. However, on March 16, 1978, without notice to plaintiff, DURA adopted a Resolution terminating the working relationship with plaintiff because of plaintiff's failure to execute, within the 90-day period, a Redevelopment Agreement. Accordingly, DURA returned plaintiff's deposit to her.

Plaintiff filed this action seeking damages based upon theories of breach of contract, promissory estoppel, violations of 42 U.S.C. § 1983, and outrageous conduct. After extensive discovery, defendants filed a motion to dismiss or in the alternative for summary judgment which the trial court granted.

## I. Breach of Contract

The trial court found that the Offer to Negotiate was, as a matter of law, an "agreement to agree" which is unenforceable and which does not give rise to obligations on the part of either party. We agree.

■ As found in the Offer to Negotiate, the Resolution accepting plaintiff's Offer to Negotiate, and the Proposal for Sale of Land for Redevelopment, the intent of the parties was that the final acceptance of plaintiff's proposal would occur upon execution of the Redevelopment Agreement. In addition, several material terms of the proposal were undetermined when DURA terminated the relationship with plaintiff. Under these circumstances, we conclude that no contract existed between DURA and plaintiff. *See Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, 479 P.2d 875 (1971). Therefore, the trial court properly dismissed this claim for relief.

## II. Promissory Estoppel

The plaintiff's second claim for relief alleges that DURA promised plaintiff that it would negotiate in good faith for a period of 90 days for the purpose of reaching an agreement on the purchase, rehabilitation, and redevelopment of the Tower; that this promise was relied upon by plaintiff and it induced plaintiff to expend substantial time, effort, and money in furtherance of the anticipated negotiations; that DURA breached this promise to negotiate in good faith; and that this breach creates an injustice which can only be remedied by an award of damages for the value of her time and effort and for the sums expended.

Plaintiff relies upon *Mooney v. Craddock*, 35 Colo.App. 20, 530 P.2d 1302 (1974) which adopted the doctrine of promissory estoppel as set forth in the *Restatement of Contracts* § 90, as follows:

"A promise which the promissor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and

which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

■ Here, plaintiff's Offer to Negotiate provides that the proposal shall be irrevocable for the 90-day period, or "upon such earlier date as the authority may reject this offer in writing." Thus, notwithstanding that DURA agreed that plaintiff would have exclusive negotiating rights for 90 days, DURA could reject plaintiff's proposal prior to the conclusion of the 90-day period. Plaintiff does not allege that DURA negotiated with any other redeveloper within that 90-day period. Thus, we conclude that DURA did not breach its promise to plaintiff, and, as a matter of law, the doctrine of promissory estoppel is inapplicable here.

### III. Outrageous Conduct

Plaintiff's fourth claim for relief alleges that the totality of the actions taken by DURA constitute outrageous conduct entitling plaintiff to damages. The trial court found that DURA is a public entity and therefore entitled to the notice required under the Governmental Immunity Act, § 24–10–101 et seq., C.R.S.1973, that notice was not given, and that in any event, plaintiff failed to state a claim for outrageous conduct.

■ An individual commits the tort of outrageous conduct if, by extreme and outrageous conduct, he intentionally or recklessly causes severe emotional distress to another. *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970). It is for the trial court to determine in the first instance whether reasonable persons could differ as to the outrageousness issue. *Meiter v. Cavanaugh*, 40 Colo.App. 454, 580 P.2d 399 (1978). Here, viewing the allegations in the light most favorable to plaintiff, we agree that reasonable persons could not characterize DURA's conduct as atrocious and utterly intolerable in a civilized community. *See Rugg v. McCarty, supra.* Since the claim is clearly not sustainable it was properly dismissed. *See Nelson v. Nelson*, 31 Colo.App. 63, 497 P.2d 1284 (1972).

Since plaintiff has failed to state a claim for outrageous conduct, we need not reach the issue of whether DURA is a public entity for the purpose of the Governmental Immunity Act.

### IV. Constitutional Claims

Plaintiff's third claim for relief is based upon violations of 42 U.S.C. § 1983, namely: (1) that DURA violated plaintiff's due process rights by taking her "property" without notice or hearing; and (2) that DURA's termination of the negotiations was a result of plaintiff's exercise of her First Amendment free speech right.

As to plaintiff's first contention, plaintiff asserts that her "property" consists of the contractual right to negotiate. Since we have previously concluded that such a contractual right did not exist, plaintiff's contention is without merit. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

As to plaintiff's second contention, plaintiff has alleged that the actions taken by DURA were in retaliation for her criticism of the proposed design for the adjacent property.

Plaintiff's comments regarding the effect of the proposed hotel complex on the Daniels and Fisher Tower, listed on the National Register of Historic Places, are constitutionally protected speech.

■ Plaintiff has a claim under 42 U.S.C. § 1983 if she can show: (1) that plaintiff's remarks were a substantial factor in DURA's decision to terminate negotiations; (2) that but for such remarks, she and DURA would have entered into a redevelopment contract; (3) what the terms of such contract would have been; and (4) that she was damaged because the contract was not entered into. *See Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Durango School District No. 9–R v. Thorpe*, Colo., 614 P.2d 880 (1980). If the plaintiff can make this showing, then DURA may avoid liability by demonstrating that it would have reached the same decision even in the absence of

those remarks. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Durango School District No. 9–R v. Thorpe, supra.* Since these determinations involve unresolved fact issues, the trial court erred in entering summary judgment on this claim. *See Ginter v. Palmer Co.*, 196 Colo. 203, 585 P.2d 583 (1978).

The judgment is affirmed in part, reversed in part, and remanded to the trial court with directions to reinstate plaintiff's claim for damages based upon violation of her First Amendment free speech right.

VAN CISE and KIRSHBAUM, JJ., concur.