Shirley RIDGEWAY,
Plaintiff–Appellant,

v.

KIOWA SCHOOL DISTRICT C–2; The Board of Education C–2; Gary Maul, Robert Gower, David Orth and Dan Lovitt; in their capacities as members of the Board of Education and individually; and Elmer P. Yaden, individually and in his capacity as Superintendent of School of Kiowa School District C–2, Defendants–Appellees.

No. 88CA1342.

Colorado Court of Appeals,
Div. II.

Nov. 2, 1989.

Rehearing Denied Jan. 11, 1990.

Certiorari Denied July 23, 1990.

George C. Price, P.C., George C. Price, Douglas J. McGinty, Craig H. Russell, Denver, for plaintiff-appellant.

Cockrell, Quinn and Creighton, Benjamin L. Craig, Denver, for defendants-appellees.

Opinion by Judge FISCHBACH.

Plaintiff, Shirley Ridgeway, appeals the trial court's judgment in favor of defendants, Kiowa School District C–2, the Board of Education C–2, several Board members, and Elmer Yaden, Kiowa Superintendent of Schools, dismissing her complaint seeking damages for defendants' violation of her right of free speech under the First Amendment and Colo. Const. art. II, § 10. We affirm in part and reverse in part.

The record reflects the following facts. In the summer of 1984, the Board met to explore options to improve public relations. The Board president suggested that a teacher be appointed to write articles of educational interest for the local paper and recommended Ridgeway for the unpaid position. Ridgeway accepted and ultimately wrote at least 10 articles for the paper under the heading "Kiowa Notebook" and credited to "Shirley Ridgeway, 3rd Grade Teacher, Kiowa."

A number of Ridgeway's articles were submitted to the superintendent prior to publication and published without edits or complaints. On January 31, 1985, however, Ridgeway, without submitting a copy to the superintendent, published an article criticizing the Board's poor attendance at a recent joint Board/teacher meeting and protesting the Board's lack of concern over the district's high teacher turnover rate. Ridgeway was particularly disturbed about the effect of high teacher turnover on the quality of education in the district and had conducted research on the turnover rate in other districts and discussed the situation with her colleagues.

Thereafter, the Board sent Ridgeway a reprimand for her "insubordinate conduct" in publishing the article without first submitting it to the administrator "as required." The letter stated that Ridgeway's article was "deliberately slanted," "intended to insult and demean ... fellow staff members," and constituted "an attempt on [Ridgeway's] part to take advantage of her position as public relations person." In addition, it chastised Ridgeway for other "insubordinate conduct," including her abrupt departure from the Board/teacher meeting after a Board member denigrated her concern about teacher turnover. Finally, the letter warned that "any further acts of insubordination or breaches of policy [would] lead to the filing of [dismissal] charges."

After receiving the letter, Ridgeway's health deteriorated, and, on the advice of her physician, she took medical leave from her teaching.

Based on the letter of reprimand and her subsequent difficulties, Ridgeway served a complaint upon defendants setting forth three causes of action: (1) violation of Ridgeway's rights secured by the First and Fourteenth Amendments and enforceable pursuant to 42 U.S.C. § 1983 (1982); (2) violation of her rights under Colo. Const. art. II, § 10; and (3) intentional infliction of emotional distress. The trial court denied Ridgeway's motion for partial summary judgment on the constitutional claims and initially granted defendants' motion for summary judgment on all three of Ridgeway's claims.

Upon Ridgeway's motion for reconsideration, the trial court acknowledged that a disputed issue of fact existed as to whether Ridgeway wrote the contested article as official spokesperson for the district and granted an evidentiary hearing on this limited issue. After resolving this evidentiary question in the affirmative and concluding, therefore, that the article was constitutionally unprotected, the court, in effect, reinstated its summary judgment in favor of defendants on all issues.

Ridgeway now appeals only the trial court's dismissal of her free speech claims and its failure to grant partial summary judgment in her favor. Thus, neither the procedural propriety of the limited evidentiary hearing nor the correctness of the dismissal of Ridgeway's claim alleging intentional infliction of emotional distress is before us.

I.

Ridgeway contends that the trial court erred in its evaluation of the protection

afforded her article under the United States and Colorado Constitutions by not balancing her interests against those of the school district. We agree that the trial court did not spell out the steps of the constitutional balancing test; however, we conclude it did, in effect, properly balance the appropriate interests. Hence, we find no reversible error in this regard.

■ To support a claim that she has been disciplined in retaliation for exercising her right of free speech as secured by the United States and Colorado Constitutions, plaintiff, as a public employee, must show that her conduct was constitutionally protected and that it was a "substantial" or "motivating" factor in her employer's decision. After this initial showing by the employee, the employer may avoid liability by demonstrating "by a preponderance of the evidence that it would have reached the same decision ... even in the absence of the protected conduct." *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Durango School District No. 9–R v. Thorpe*, 200 Colo. 268, 614 P.2d 880 (1980).

■ The initial determination of whether the conduct is constitutionally protected requires a balancing of "the interests of the teacher, as a citizen, in commenting upon matters of public concern, and the interest of the state, as an employer, in promoting the efficiency of the public service it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Durango School District v. Thorpe, supra.* Irrespective of the content of the statement, the balance may tip against constitutional protection in light of the manner, time, place, and context in which it was uttered. *See Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Accordingly, if the manner, time, place, and context of an employee's statement, regardless of its otherwise protected content, reveal that the statement constituted a refusal to perform a lawful task within the scope of the employee's duties, it is insubordination and, as such, constitutionally unprotected.

*Connick v. Myers, supra* (Brennan, J., dissenting); *see Lockhart v. Board of Education*, 735 P.2d 913 (Colo.App.1986); *Chitwood v. Feaster*, 468 F.2d 359 (4th Cir. 1972).

Here, after an evidentiary hearing on the sole issue of Ridgeway's status in writing the newspaper articles, the trial court found that she had agreed to write them at the request of the school superintendent "to project a more positive image of the school to the community." It found, in addition, that Ridgeway "acknowledged [the superintendent] as her superior and that, as part of her duty, she was to provide him with a copy of each article prior to submitting them [sic] to the newspaper for publication."

Although the evidence is conflicting as to this issue, there is support in the record for these factual findings, and hence, we may not disturb them. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

Based on these findings, we conclude that the trial court did not err in effectively striking the balance for the employer and concluding that Ridgeway's article was not constitutionally protected.

■ Ridgeway, as a teacher and citizen, could not have been disciplined for criticizing the Board of Education on a matter of public concern in a public forum. *See Pickering v. Board of Education, supra.* However, the evidentiary hearing and documents on file establish that Ridgeway's forum under the heading "News from Kiowa" was not that of a teacher and citizen espousing on a matter of public concern, but rather that of the school district's public relations spokesperson.

Ridgeway does not argue that the requirement that the spokesperson submit her articles to the administrator for review is constitutionally impermissible. Thus, regardless of the content of the article, the time, manner, and context of its publication demonstrate that it was submitted contrary to a lawful rule within the scope of Ridgeway's duties. The article, therefore, was not constitutionally protected, and Ridgeway's ensuing reprimand, insofar as it was

issued only to chastise her for publishing the article in violation of procedures, was permissible.

## II.

■ However, Ridgeway also asserts that even if the article itself was not constitutionally protected based on the court's findings from the evidentiary hearing concerning her status as spokesperson, the court erred in granting summary judgment for the defendants on that part of her claim alleging retaliation for exercising her personal right to speak on matters of public concern in other forums. She asserts that summary judgment on this issue should have been entered in her favor or, alternatively, that a disputed issue of material fact exists as to whether the defendants' motivation for giving the reprimand was to silence her public and private discussions on the issue of teacher turnover. We agree that the defendants' motivation is a disputed issue and, therefore, that summary judgment in favor of defendants was error.

As discussed above, a public employee seeking to recover on the ground that she has been disciplined for exercising her right of free speech must demonstrate that her conduct is constitutionally protected and that such protected conduct was a substantial or motivating factor in her employer's decision. The burden then shifts to the employer to show that it would have reached the same decision irrespective of the protected conduct. *Mt. Healthy v. Doyle, supra; Durango v. Thorpe, supra.* Thus, the question raised by Ridgeway concerning defendants' motivation does not arise until it has been determined that her conduct was constitutionally protected.

■ The trial court did not address this threshold issue with respect to Ridgeway's conversations concerning teacher turnover, but rather granted summary judgment on her free speech claims on the ground that the article was not constitutionally protected. However, because the determination whether communications are constitutionally protected is ultimately one of law, it is subject to our independent examination in light of the record evidence. *Koch v. City of Hutchinson,* 847 F.2d 1436 (10th Cir. 1988), *cert. denied,* 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988). We conclude that Ridgeway's public and private conversations concerning teacher turnover were constitutionally protected.

The first element that must be satisfied to warrant constitutional protection is that the communication must involve a matter of public concern. That is, the speech, considering its content, form, and context, must be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers, supra; see Lockhart v. Board of Education, supra.* In analyzing the context of a statement, courts have focused on the motive of the speaker to determine whether the speech qualifies as a matter of public concern, *i.e.,* whether the speaker sought merely to redress a personal grievance or to address the public interest. *Conaway v. Smith,* 853 F.2d 789 (10th Cir.1988).

Here, the subject matter itself, teacher turnover, is one in "which the public would understandably be concerned." *Wren v. Spurlock,* 798 F.2d 1313 (10th Cir.1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1287, 94 L.Ed.2d 145 (1987). In addition, according to the record, Ridgeway's communications concerning turnover were not motivated by a desire to redress a personal grievance rather than by a desire to solve the problem. Instead, the record reflects that until the defendants became annoyed at her "agitation" on this issue, she was highly respected and had no significant personal grievance to air. We conclude, therefore, that Ridgeway's communications on teacher turnover were a matter of public concern. *See Wren v. Spurlock, supra.*

The next step is to balance Ridgeway's interest in commenting on the matter with that of the state in promoting the efficiency of its services. The scale balances in favor of constitutional protection "unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee." *Childers v.*

*Independent School District No. 1,* 676 F.2d 1338 (10th Cir.1982).

Here, the defendants have submitted no evidence that Ridgeway's discussions concerning turnover would disrupt the functioning of the school. Accordingly, we agree with Ridgeway that her speech was constitutionally protected.

Because the first prong of the *Mt. Healthy* test has been satisfied, we may now proceed to Ridgeway's assertion that a disputed issue of fact exists as to defendants' motivation in issuing the letter of reprimand.

Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact. All doubts as to the existence of such an issue must be resolved against the moving party. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988); *Kennedy v. Board of County Commissioners,* 776 P.2d 1159 (Colo.App. 1989). Summary judgment is usually inappropriate in cases dealing with potentially unconstitutional motivations. Because evidence concerning motive is almost always subject to a variety of conflicting interpretations, a full trial on the merits is normally the only way to separate permissible motivations from those that merely mask unconstitutional actions. *Tovar v. Billmeyer,* 721 F.2d 1260 (9th Cir.1983), *cert. denied,* 469 U.S. 872, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984).

The submissions on file include deposition testimony by a Board member that during the executive session in which the reprimand was first addressed, the superintendent expressed concern not only about Ridgeway's failure to follow procedures with respect to the article, but also about her "bombarding his office with materials in support of her position concerning the turnover situation," and about "complaints by other teachers, other faculty members, things of this particular type, of agitation on her part." In addition, the reprimand letter itself, while specifying that it was issued because of her "election to ignore [a] direct instruction concerning [her] charge as public relations person," also chastised her for the content of the article and for her abrupt departure from a joint faculty/board meeting after a board member discounted her opinion on the issue of faculty turnover.

Taken in the light most favorable to the nonmoving party, this evidence does present a triable issue as to whether the main motivation for the reprimand was Ridgeway's insubordination in failing to follow procedures or was, instead, to dampen her constitutional right as a teacher and citizen to discuss the teacher turnover question with other faculty members and the public. For this reason, the court erred in granting summary judgment on Ridgeway's constitutional claims.

Because we have concluded that defendants' motivation is a disputed issue of fact, we reject Ridgeway's assertion that the trial court erred in failing to grant summary judgment in her favor.

The judgment is affirmed insofar as the court determined that Ridgeway's article of January 31, 1985, was not constitutionally protected. Insofar as the court granted summary judgment on Ridgeway's claims that the letter of reprimand was issued for the purpose of silencing her public and private speech on a matter of public concern, the judgment is reversed, and the cause is remanded for further proceedings.

SMITH and TURSI, JJ., concur.