The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
September 15, 2022

**2022COA108**

**No. 20CA1742, *M.G. Dyess, Inc. v. MarkWest Liberty Midstream
& Resources, L.L.C.* — Civil Procedure — Right to Trial by Jury
— Trial by Jury or By the Court — Findings by the Court —
Advisory Jury and Trial by Consent; Contracts — Quantum
Meruit**

As a matter of first impression, a division of the court of
appeals considers whether quantum meruit claims are legal or
equitable for purposes of determining whether a party has a right to
a jury trial on such a claim. The division concludes that, where the
claimant has requested monetary damages, the quantum meruit
claim is legal, and the claimant is entitled to a jury trial under
C.R.C.P. 38(a).

The division further considers whether, pursuant to C.R.C.P.
52, a trial court may unilaterally reduce the amount of damages
awarded in a binding jury verdict. It concludes that C.R.C.P. 52

does not provide that authority. Because the trial court did so here, it erred. Accordingly, the division reverses the judgment insofar as the trial court reduced the damages, but it affirms the judgment insofar as the court accepted the jury's verdict on liability.

The division also rejects the appellant's contention that the trial court erred by denying its motion for judgment notwithstanding the verdict on the appellee's counterclaim, concluding there was evidence upon which a verdict against the appellant could be sustained.

It remands the case for entry of an amended judgment and an award of pre- and post-judgment interest to both parties.

Court of Appeals No. 20CA1742
City and County of Denver District Court No. 18CV34745
Honorable Michael J. Vallejos, Judge

M.G. Dyess, Inc., a Mississippi corporation,

Plaintiff-Appellant,

v.

MarkWest Liberty Midstream & Resources, L.L.C., a Delaware limited liability
corporation,

Defendant-Appellee.

---

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE RICHMAN
Pawar and Brown, JJ., concur

Announced September 15, 2022

---

Wheeler Trigg O'Donnell LLP, Edward C. Stewart, Frederick R. Yarger, Denver, Colorado; Moore Williams PLLC, Marie E. Williams, Golden, Colorado; Kilpatrick Townsend & Stockton LLP, Adam H. Charnes, Dallas, Texas, for Plaintiff-Appellant

Snell & Willmer L.L.P., Michael E. Lindsay, James Kilroy, Ellie Lockwood, Denver, Colorado; Snell & Willmer L.L.P., Kelly H. Dove, Las Vegas, Nevada for Defendant-Appellee

¶ 1   In this construction contract dispute, plaintiff, M.G. Dyess, Inc. (Dyess), appeals post-trial orders reducing the amount of damages awarded on its quantum meruit claim and denying its motion for judgment notwithstanding the verdict (JNOV) on defendant's counterclaim.  Defendant, MarkWest Liberty Midstream & Resources, L.L.C. (MarkWest), and Dyess both appeal the trial court's denial of their motions for pre- and post-judgment interest. We affirm in part, reverse in part, and remand this case with directions.

## I.   Background

¶ 2   MarkWest, a corporation that processes and transports natural gas, entered into three contracts with Dyess, a pipeline construction company, to install thousands of feet of pipeline.  Each of the three contracts concerned a particular length of pipeline, called a "spread," and each spread was assigned a lump sum payment amount and a "mechanical completion date" after which liquidated damages would accrue if the spread remained incomplete.

¶ 3   According to Dyess, MarkWest materially hindered its work, increasing the costs and duration of the project.  Dyess sued

1

MarkWest, asserting claims for breach of contract, negligent misrepresentation, fraudulent nondisclosure, fraud, promissory estoppel, and quantum meruit. MarkWest countered that it had not hindered Dyess's work, and Dyess failed to achieve mechanical completion by the contractual deadlines. MarkWest brought counterclaims for liquidated damages under the contract and declaratory judgment. Per jury demands by both parties, the case was set for a jury trial, which began on February 3, 2020.

¶ 4 During the trial, however, MarkWest asserted that Dyess's promissory estoppel and quantum meruit claims were not triable to the jury because they are equitable claims. Dyess argued that its claims were legal and contended that, in any case, MarkWest had waived any objection to a jury trial.

¶ 5 The trial court concluded that Dyess had brought "a mix of legal and equitable claims," but the court did not specify which claims were equitable. It stated an intention to submit all the claims to the jury under C.R.C.P. 39(c), which permits courts to "try any issue with an advisory jury" in "all actions not triable by a jury." The court also noted that, if the jury returned a verdict

2

awarding relief on an "arguably equitable claim," it could permit further briefing.

¶ 6     The jury rejected all of Dyess's claims except its quantum meruit claim, for which it awarded $26,039,641 in damages. It also awarded MarkWest $4,500,000 in liquidated damages based on its breach of contract counterclaim. When the verdict was read, MarkWest immediately made an oral motion to treat the jury's quantum meruit verdict as advisory, asking the court to "decide this issue." The court ordered additional briefing.

¶ 7     In response, MarkWest filed a motion, captioned as a motion under C.R.C.P. 52, asking the court to make findings of fact and conclusions of law regarding the quantum meruit claim. It urged the court to conclude that MarkWest was not liable to Dyess for the quantum meruit claim, and in the alternative, that Dyess could only recover $934,436, the approximate amount Dyess claimed for the items listed in Instruction 60 (the quantum meruit jury instruction). Dyess countered that its expert had testified to overall losses equal to or greater than the amount awarded and, therefore, the $26,039,641 verdict was supported by evidence.

3

¶ 8     The trial court concluded, in a written order titled "Order Regarding Defendant's Brief in Support of Motion Pursuant to C.R.C.P. 52," that (1) MarkWest did not waive its objection to a jury trial; and (2) quantum meruit is "an equitable theory of recovery . . . triable by the court and not by a jury, subject to the right of the court to impanel an advisory jury under C.R.C.P. 39(c)." It accepted the jury's "advisory verdict" insofar as the jury found that MarkWest was liable under a quantum meruit theory, but the court concluded that the amount awarded was not supported by the evidence. It reduced the amount of damages to $934,436. On the same day, it entered judgment on the jury verdict as modified by its C.R.C.P. 52 order.

¶ 9     Dyess subsequently filed a motion for JNOV on MarkWest's breach of contract counterclaim, asserting that it had achieved mechanical completion before the final mechanical completion dates, which it claimed MarkWest had extended. The trial court did not rule on the motion, and it was therefore deemed denied by rule. *See* C.R.C.P. 59(j).

¶ 10    Dyess did not file any other post-trial motions challenging the jury's verdict, although the jury had denied Dyess's other claims.

MarkWest did not seek post-trial relief on any claim. However, both parties filed C.R.C.P. 59(c)(4) motions to amend the judgment to include pre- and post-judgment interest. These motions were also deemed denied. *See* C.R.C.P. 59(j).

¶ 11 Dyess now appeals (1) the order treating the verdict in its favor as advisory and reducing the damages award; (2) the denial of its motion for JNOV with respect to MarkWest's counterclaim; and (3) the denial of its motion for pre- and post-judgment interest. MarkWest cross-appeals the denial of its motion for pre- and post-judgment interest.

## II. Quantum Meruit Claim

### A. Standard of Review and Law

¶ 12 Dyess asks us to decide whether the trial court erred when it partially rejected the jury's verdict under C.R.C.P. 52, ultimately reducing the amount of damages awarded. This question turns, in part, on whether Dyess had a right to a jury trial because, as relevant here, Rule 52 only applies in "actions tried . . . with an advisory jury."

¶ 13 We review a party's right to a jury trial in a civil case de novo. *People v. Shifrin*, 2014 COA 14, ¶ 14. To the extent the issues

raised require us to construe the Colorado Rules of Civil Procedure, we also employ a de novo standard of review. *See Mason v. Farm Credit of S. Colo.*, 2018 CO 46, ¶ 7.

¶ 14    There is no constitutional right to a jury trial in civil cases in Colorado. *Id.* at ¶ 9. To the extent the right exists, it is derived from C.R.C.P. 38(a). Rule 38(a) provides for a jury trial only in "proceedings that are legal in nature, not equitable." *Mason*, ¶ 10.

¶ 15    There are two methods for determining whether an action is legal or equitable. *Id.* at ¶ 27. The first method is to examine the nature of the remedy sought. *Id.* Actions seeking an award of monetary damages are generally legal, while actions seeking to employ the coercive powers of the court are generally equitable. *Id.* The second method is to look to the historical nature of the right to be enforced. *Id.* "If the plaintiff is seeking to enforce a right historically decided by equity courts, the claim is equitable. If the right was historically enforced by a court of law, the claim is legal." *Id.* (citation omitted). Of the two methods, the remedial method is generally preferred. *Peterson v. McMahon*, 99 P.3d 594, 598-99 (Colo. 2004) (noting that because the plaintiff in this trust action sought the immediate and unconditional payment of money, the

action was legal despite the "overwhelmingly equitable history of trusts").

## B.    Analysis

¶ 16    In its complaint, Dyess sought to recover, under a quantum meruit theory, the reasonable market value of labor and materials it provided on an extracontractual basis. In other words, Dyess asked for a simple money judgment. *See Mason*, ¶ 11 (stating that whether an action is legal or equitable is dictated only by the claims in a plaintiff's complaint). Given our supreme court's preference for the remedial method of deciding this issue, the remedy that Dyess sought strongly favors the conclusion that the claim is legal. *Stuart v. N. Shore Water & Sanitation Dist.*, 211 P.3d 59, 62 (Colo. App. 2009) (noting that actions for money damages are legal). Nonetheless, the fact that a plaintiff sought monetary relief does not, by itself, necessarily determine if a claim is legal or equitable. *State ex rel. Weiser v. Ctr. for Excellence in Higher Educ., Inc.*, 2021 COA 117, ¶ 65; *Shifrin*, ¶ 17 (stating that, even if a plaintiff seeks money damages, a jury trial is not required if the action is equitable). We must therefore examine the nature and history of quantum meruit claims.

¶ 17    In Colorado, a plaintiff may bring a quantum meruit claim when substantial changes have occurred that are "not covered by the contract and are not within the contemplation of the parties," and those changes have required extra work or caused substantial loss to one party. *Specialized Grading Enters., Inc. v. Goodland Constr., Inc.*, 181 P.3d 352, 354 (Colo. App. 2007). The purpose of the claim is to avoid unjust enrichment despite the absence of an express agreement to pay. *Melat, Pressman & Higbie, L.L.P. v. Hannon L. Firm, L.L.C.*, 2012 CO 61, ¶ 19.

¶ 18    Because a quantum meruit claim is grounded on principles of fairness, our supreme court and some divisions of this court have called it, or its related claims, an "equitable doctrine," an "equitable theory," or an "equitable remedy." *Id.* ("equitable theory of recovery"); *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 445 (Colo. 2000) ("equitable doctrine"); *Jorgensen v. Colo. Rural Props., LLC*, 226 P.3d 1255, 1259 (Colo. App. 2010) (unjust enrichment claim an "equitable remedy"); *see also Jones v. Crestview S. Baptist Church*, 192 P.3d 571, 573 (Colo. App. 2008) (unjust enrichment and quantum meruit are "equitable claims"); 26 Richard A. Lord, *Williston on Contracts* § 68:1, Westlaw (4th ed. database updated

8

May 2022) ("It has also been said that quantum meruit, quasi-contract, and an implied at law contract are equivalent terms for an equitable remedy.").  Even so, we have found no Colorado case, and MarkWest has cited none, holding that quantum meruit claims are equitable for purposes of determining whether a party is entitled to a jury trial.  The "equitable doctrine" language cited above, while correctly describing the fairness concerns central to the claim, does not address whether quantum meruit claims have historically been enforced by courts of equity.  26 Lord, § 68:1 (noting that, although equitable considerations influence whether recovery is warranted, the quantum meruit claim "was developed as part of the common law of contracts").

¶ 19     Our review of the history and theoretical underpinnings of quantum meruit claims in Colorado reveals that these actions were traditionally enforced by courts of law, based on the existence of an implied contract to pay.  *See Hansen v. Jones*, 115 Colo. 1, 7, 168 P.2d 263, 265 (1946) (noting that a plaintiff who had no express contract with the defendant could sue on a theory of implied contract or quantum meruit).  Such payments were historically sought through a writ of assumpsit, a legal writ.  *See, e.g., Schleier*

*v. Bonella*, 77 Colo. 603, 604-06, 237 P. 1113, 1113-14 (1925) (seeking recovery in quantum meruit based on an implied promise to pay for services); *Snowden v. Clemons*, 5 Colo. App. 251, 255, 38 P. 475, 477 (1894) (finding a valid "assumpsit upon a quantum meruit" claim for services rendered under an implied contract); *cf. Cree v. Lewis*, 49 Colo. 186, 189-92, 112 P. 326, 327-28 (1910) (noting that although the plaintiff could have brought an action in assumpsit in a court of law to recover money, he instead brought an equitable suit asking the court to declare that certain real estate was held in trust for him); 1 Dan B. Dobbs, *Law of Remedies* § 4.1(3), at 565 (2d ed. 1993) (stating that restitution in money was afforded at law through quasi-contract actions).

¶ 20     Because quantum meruit, quasi-contract, and assumpsit claims were generally enforced by courts of law, numerous federal and state courts have concluded that such claims are legal, not equitable. *See, e.g., City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 717 (1999) (noting that an action premised on the existence of a quasi-contract is an action at law); *Austin v. Shalala*, 994 F.2d 1170, 1176-77 (5th Cir. 1993) ("Because general assumpsit was a legal action at common law, a suit in

quasi-contract requires a jury trial."); *Jogani v. Superior Ct.*, 81 Cal. Rptr. 3d 503, 508 (Ct. App. 2008) ("[W]e conclude that quantum meruit was recognized as a form of the common law writ of assumpsit . . . and that the parties to a quantum meruit action consequently have a right to a jury trial."); *Nehi Beverage Co. of Indianapolis v. Petri*, 537 N.E.2d 78, 85 (Ind. Ct. App. 1989) (stating that quantum meruit claims are triable to a jury because they are based on "legal fictions created by courts of law").

¶ 21    Here, Dyess asked for simple money damages via a quantum meruit claim, which courts of law have historically enforced. We conclude that, under applicable Colorado precedent and persuasive precedent from other jurisdictions, Dyess's claim was legal, not equitable. The trial court erred by deeming the claim equitable and treating the jury's verdict as advisory.

### C.    Reversal

¶ 22    The denial of a party's right to a jury trial in a civil case is reversible error where, as here, the error is preserved and the trial court has made a ruling that affects a substantial right of a party. C.R.C.P. 61; *see also Mason*, ¶¶ 1, 32 (reversing where the court erroneously denied a civil defendant a jury trial, finding him liable).

11

However, in this case, the trial court did not deny Dyess the right to a jury trial; rather, it treated the jury verdict as advisory. Under these circumstances, a new jury trial is not required because the jury rendered a verdict in favor of Dyess on its quantum meruit claim. We can affirm the judgment insofar as the trial court accepted the jury's verdict that MarkWest is liable for quantum meruit damages. In that regard, Dyess was not denied the benefit of its jury demand, and any error is harmless.[1]

¶ 23 Nonetheless, we must examine whether the trial court's reduction of damages under C.R.C.P. 52 is supportable. We conclude it is not. A trial court may not alter the substance of a binding jury verdict pursuant to Rule 52, which grants such powers only with respect to bench trials or advisory verdicts. *See Leo Payne Pontiac, Inc. v. Ratliff*, 178 Colo. 361, 365, 497 P.2d 997,

---

[1] We note that, after the trial court entered judgment, MarkWest did not file a C.R.C.P. 59 motion for a new trial asking the court to alter the conclusion that it was liable to Dyess. It also did not cross-appeal the jury's liability finding or the court's entry of judgment in favor of Dyess on its quantum meruit claim. Moreover, at oral arguments, MarkWest conceded that it was bound on the issue of liability. Therefore, no new trial on MarkWest's liability for Dyess's quantum meruit claim is available.

998-99 (1972) (noting that the trial court erred when it reduced damages on its own motion after a binding jury verdict). The court did so here, and in doing so, it erred. Further, the court's error was not harmless because Dyess was deprived of the right to have a judgment in the amount of $26,039,641 entered in its favor.

¶ 24     Accordingly, we reverse the judgment insofar as the trial court reduced the amount of damages awarded from $26,039,641 to $934,436. We remand with directions to enter an amended judgment in favor of Dyess on the quantum meruit claim in the amount of $26,039,641 and to permit the parties to file post-trial motions regarding the amended judgment. Such motions, however, may only address the amount of quantum meruit damages. They may not challenge the liability verdict.[2]

---

[2] A court may order a new trial solely on the issue of damages if liability and damages are distinct issues. *See Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 934 (Colo. 1997) ("Whenever a new trial must be held on one issue, a new trial must also be held with respect to other issues unless 'the issue to be retried is entirely distinct and separable from the other issues involved in the case and . . . a partial retrial can be had without injustice to any party.'" (quoting *Bassett v. O'Dell*, 178 Colo. 425, 427, 498 P.2d 1134, 1135 (1972))). Where, as here, liability has been clearly established, "partial retrial may be held solely on the issue of damages." *Id.*

13

¶ 25    Moreover, since no other post-trial motions were timely filed as to any of Dyess's claims, and Dyess did not appeal the judgment with respect to those claims, such motions may not be filed on remand.

### III.    Counterclaim for Breach of Contract

¶ 26    We next address whether the trial court erred by denying Dyess's motion for JNOV on MarkWest's counterclaim for breach of contract.  The crux of Dyess's argument is that there was no reasonable basis for the jury to conclude that Dyess did not achieve mechanical completion on all three spreads by the final mechanical completion dates, which Dyess alleges MarkWest extended.

### A.    Standard of Review and Law

¶ 27    We review de novo a trial court's rulings on motions for directed verdicts and for JNOV.  *Vaccaro v. Am. Fam. Ins. Grp.*, 2012 COA 9M, ¶ 40.  Where, as here, the motion is based on a factual dispute, we view the evidence in "the light most favorable to the nonmoving party and draw all reasonable inferences from the evidence in that party's favor."  *Int'l Network, Inc. v. Woodard*, 2017 COA 44, ¶ 8.  Motions for JNOV should only be granted when, from the standpoint of a reasonable juror, there was no evidence, or

inference therefrom, upon which a verdict against the movant could be sustained. *Id.* If the facts are sufficiently in dispute such that reasonable people could reach different conclusions, it is the function of the jury to resolve those disputes. *Cox v. Johnston,* 139 Colo. 376, 380, 339 P.2d 989, 991 (1959). As stated in *Thorpe v. Durango School District No. 9-R,* 41 Colo. App. 473, 475, 591 P.2d 1329, 1331 (1978), *aff'd,* 200 Colo. 268, 614 P.2d 880 (1980), "[w]here there exists two inferences that the trier of fact can draw from the evidence, it is error for the trial court to select one not chosen by the jury."

## B.  Analysis

¶ 28   These facts were not disputed at trial:

- The spread 1A contract set a mechanical completion date of January 15, 2018, and provided for "late completion payments" of $30,000 per day, up to $3,000,000.

- The spread 1B contract set a mechanical completion date of October 1, 2017 (using slightly different parameters), and provided for "late completion payments" of $10,000 per day, up to $500,000.

- The spread 2 contract set a mechanical completion date of January 15, 2018, and provided for "late completion payments" of $10,000 per day, up to $1,000,000.

- In December 2017, the parties signed written agreements extending the mechanical completion dates for spreads 1A and 2 to March 22, 2018.[3]

- Dyess did not achieve mechanical completion on spread 1B until February 2018, and it did not achieve mechanical completion on spreads 1A and 2 until, at the earliest, July 13, 2018.

¶ 29 Thus, if the liquidated damages clauses applied as originally written or as extended in writing, Dyess was liable for the full amount of the liquidated damages available.

¶ 30 However at trial, Patrick Rudy, MarkWest's director of pipeline construction, testified that he had authority to extend, and did orally extend, the mechanical completion dates to July 15, 2018, for

---

[3] MarkWest argues that any additional extension was required to be in writing. Dyess claims that no writing was necessary. We need not decide this issue because the jury verdict indicates the jury concluded no additional binding extensions were given, whether oral or written.

spreads 1A and 2.  He also testified he was "just fine" with the date that Dyess completed spread 1B.  Dyess argues that this testimony was not contradicted or limited by any other evidence.  Thus, the jury had no reasonable basis for its conclusion that Dyess missed the final mechanical completion dates.  We disagree.

¶ 31     Dyess's project manager, Bryan McRaney, testified that the mechanical completion dates for spreads 1A and 2 were extended to March 28, 2018,[4] but Dyess did not achieve mechanical completion by that date.  He further testified that the mechanical completion date for spread 1B "never changed."  McRaney did not testify, as Rudy did, that MarkWest extended the final mechanical completion dates for spreads 1A and 2 to July 15, 2018, or that the late completion of spread 1B was acceptable to MarkWest.

¶ 32     Dyess argues that these omissions are meaningless because McRaney was only testifying about the initial extension of the mechanical completion dates, and he wasn't directly asked about

---

[4] Although the parties did not dispute there was a written agreement extending the mechanical completion dates for spreads 1A and 2 to March 22, 2018, it is not clear both parties agreed that a subsequent extension to March 28, 2018, was granted.

additional extensions.  This argument misconstrues the import of McRaney's testimony.  While McRaney was never directly asked about additional extensions, he unconditionally confirmed that Dyess missed the March 2018 mechanical completion dates, and he never clarified that further extensions were given with respect to any of the spreads.  This testimony, or lack thereof, along with his additional testimony that, as late as July 13, 2018, he and Dyess's president were asking for a full release of liquidated damages as part of settlement negotiations, is evidence from which the jury could have reasonably inferred that any extension to July 15, 2018, was conditional on the completion of settlement negotiations.

¶ 33    MarkWest's project manager, Michael Hoy, testified that MarkWest's liquidated damages claim would have been waived if settlement negotiations had yielded an effective agreement, but it was not waived because no such agreement was made. Documentary evidence created during the negotiations also supported McRaney's and Hoy's testimony that the enforcement of liquidated damages was still a possibility in July 2018, a fact that militates against the conclusion that both parties understood the relevant dates had been unconditionally extended to July 15, 2018.

Further, Dyess's position at trial was that the parties never settled their disputes, and the jury's special verdict agreed there was no settlement. Therefore, it was reasonable for the jury to infer that MarkWest never extended the mechanical completion dates for spreads 1A and 2 to July 15, 2018, that Dyess did not achieve mechanical completion of any spread by the agreed-upon mechanical completion dates, and that MarkWest did not waive liquidated damages.

¶ 34    The jury was instructed on breach of contract, waiver, and the proper measure of damages. We presume the jury followed the instructions and rejected Dyess's waiver defense. *See Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1202 (Colo. App. 2009). Given the conflicting evidence, we cannot conclude that no reasonable person could have reached the same conclusion as the jury. We perceive no error in the trial court's denial of Dyess's motion for JNOV.

IV.    Pre- and Post-Judgment Interest

¶ 35    Both parties assert that the trial court erred by denying them pre- and post-judgment interest. Because a party's entitlement to such interest is a question of statutory interpretation, we review de

novo. *Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 825 (Colo. 2008) (prejudgment interest).

¶ 36 Section 5-12-102, C.R.S. 2021, controls an award of prejudgment interest on claims that do not involve personal injury. *Beaver Creek Ranch, L.P. v. Gordman Leverich Ltd. Liab. Ltd. P'ship*, 226 P.3d 1155, 1164 (Colo. App. 2009); *Murdock v. Cohen*, 762 P.2d 691, 693 (Colo. App. 1998) (quantum meruit claim). It permits recovery of "eight percent per annum compounded annually for all moneys . . . after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs." § 5-12-102(1)(b). Sections 5-12-102(4) and 5-12-106(1), C.R.S. 2021, permit recovery of postjudgment interest of eight percent per annum on judgments that are appealed.

¶ 37 The parties agree that all monetary amounts awarded in this case are subject to statutory pre- and post-judgment interest, and, based on the plain language of the applicable statutes, we agree. *See Bainbridge, Inc. v. Douglas Cnty. Sch. Dist. RE-1*, 973 P.2d 684, 686 (Colo. App. 1998) ("A judgment creditor whose claim falls within the clearly expressed wording of the above statutes is entitled to [postjudgment] interest."); *Fasing v. LaFond*, 944 P.2d

608, 615 (Colo. App. 1997) ("Section 5-12-102 is to be liberally construed to permit recovery of prejudgment interest on money . . . wrongfully withheld."). The parties disagree about when prejudgment interest began accruing on MarkWest's claim for liquidated damages, but not about the date when prejudgment interest began accruing on Dyess's quantum meruit claim. We remand this case to the trial court with directions to award pre- and post-judgment interest to both parties and to determine when prejudgment interest began to accrue on MarkWest's breach of contract claim. The court may do so when it is able to make a final calculation.

## V.    Conclusion

¶ 38    We reverse the judgment insofar as the trial court reduced the amount of damages awarded to Dyess on its quantum meruit claim and failed to award pre- and post-judgment interest. We affirm the judgment insofar as the trial court accepted the jury's liability verdict on the quantum meruit claim and denied Dyess's motion for JNOV as to MarkWest's counterclaim. The case is remanded for further proceedings in accordance with this opinion.

JUDGE PAWAR and JUDGE BROWN concur.

21